(No. 52484

BILLIE IRENE NOLAN, Adm'x, Appellee, v. JOHNS-MANVILLE ASBESTOS *et al.,* Appellants.

*Opinion filed February 20, 1981.—Opinion modified
June 17, 1981.*

Johnson, Cusack & Bell, of Chicago (William V. Johnson and Thomas H. Fegan, of counsel), for appellants Johns-Manville Asbestos and Midwest Pipe Covering.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller,

of Chicago (Stanley J. Davidson, Thomas J. Weithers and Frederick S. Mueller, of counsel), for appellant Owens-Corning Fiberglas Corporation.

Baker & McKenzie, of Chicago (Francis J. Morrissey, Harry J. O'Kane and Daniel J. Cheely, of counsel), for appellant Forty-Eight Insulation, Inc. *et al.*

Jacobs, Williams & Montgomery, Ltd., of Chicago (Lloyd E. Williams, Jr., and Barry L. Kroll, of counsel), for appellant Ryder Industries, Inc.

Clausen, Miller, Gorman, Caffery & Witous, P.C., of Chicago (James T. Ferrini and Kevin J. Glenn, of counsel), for appellant H. A. Jones.

Ash, Anos, Harris & Freedman, of Chicago (George J. Anos, Bruce T. Logan and Lawrence M. Freedman, of counsel), for appellant Keene Ceiling & Insulating *et al.*

O'Brien, Redding & Hyde, of Chicago (Michael W. Rathsack and Donald J. O'Brien, Jr., of counsel), for appellant Standard Asbestos Manufacturing & Insulating Company.

Wildman, Harrold, Allen & Dixon, of Chicago (Ann C. Peterson, of counsel), for appellants Certain-Teed St. Gobain Insulation Corp. and Grant Wilson.

Sloan & Connelly, P.C., of Chicago (Michael P. Connelly, of counsel), for appellant Philip Carey Corporation.

William J. Harte, Ltd., of Chicago (William J. Harte, Jan Gerske and John J. Lowrey, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

The plaintiff's decedent, Edwin L. Nolan, Jr., filed a complaint, sounding in strict liability, in the circuit court of Cook County on May 9, 1975. The complaint alleged,

*inter alia*, that the defendants manufactured, sold and distributed asbestos, fiberglass and related products which were unreasonably dangerous because the containers were not adequately labeled so as to warn of foreseeable and known dangers associated with their use, because the defendants failed to warn of the known likelihood of contracting asbestosis due to prolonged exposure and use of the products, and because the defendants failed to provide protective equipment. On a motion joined by all the defendants, and after notice and hearing, the circuit court granted summary judgment for all defendants, on the basis that Nolan's cause of action was barred by the two-year statute of limitations (Ill. Rev. Stat. 1977, ch. 83, par. 15).

Nolan appealed. During the pendency of that appeal, he died. His wife was substituted as special administratrix to prosecute the appeal. The Appellate Court for the First District reversed the judgment of the circuit court and remanded the cause for further proceedings. (74 Ill. App. 3d. 778.) We allowed leave to appeal. (73 Ill. 2d R. 315.) We affirm.

The facts are amply set forth in the appellate court opinion. A summary will suffice here. Edwin L. Nolan, Jr., was employed as an asbestos insulator from 1941 to May 11, 1973, with the exception of time spent in military service from 1943 to 1946. In 1957, Nolan became aware of shortness of breath and increasing difficulty climbing stairs. He underwent a chest X ray administered by the Suburban Tuberculosis Sanitarium, which showed he did not have tuberculosis, but indicated that he had "lung problems." Nolan consulted his family doctor, Robert Muench. Dr. Muench examined Nolan, ordered some X rays taken, and confirmed the sanitarium's statement that Nolan had lung problems, but he did not elaborate further. Dr. Muench referred Nolan to a psychiatrist, Dr. Monty Meldmann. Dr. Meldmann conducted a physical examination and ordered more X rays taken. He also told

Nolan that he had lung problems, but told Nolan he thought his problem was partly psychological as well.

Nolan again sought Dr. Muench's advice in 1965, when he noticed that his earlier complaints were becoming more pronounced. Nolan was admitted to St. Joseph's Hospital in Elgin, where he underwent a physical examination, pulmonary function tests, and chest X rays. During Dr. Muench's deposition, he read the reported findings of the hospital's X-ray department:

> "The findings suggest a generalized pulmonary fibrosis or interstitial inflammatory process. Pneumoconiosis is a consideration to be correlated with the occupational history. Chronic interstitial pneumonia, sarcoidosis, and pulmonary fungus disease are other considerations to be correlated with the clinical and laboratory data.
>
> The accentuated findings at the left anterior lower lung field may represent a supraimposed acute inflammation. Comparison to previous chest x-rays will be of value."

Dr. Muench testified during the course of the deposition that, while usually test findings and their causes are discussed with patients, he could not recall whether he had discussed the foregoing findings with Nolan. Nolan testified that Dr. Muench told him he had pulmonary fibrosis, but did not indicate any causal connection between his condition and his occupation. Nolan testified further that Dr. Muench told him there was nothing the doctor could do for him.

Nolan sought further medical attention from the Veteran's Administration Hospital after his discharge from St. Joseph's Hospital. He was told he was receiving competent treatment from Dr. Muench and was refused admittance to the hospital.

Sometime after 1968, the international union to which Nolan belonged began to publish "green sheets" as a supplement to its quarterly magazine, The Asbestos Worker. The green sheets detailed the findings of a physician, Dr. Irving Selikoff, concerning the relationship

between exposure to asbestos materials and lung problems. Nolan was not sure when he first read the green sheets.

During May 1973 Nolan consulted an internist, Dr. Robert C. Kloempken. Nolan's symptoms consisted of a serious case of diarrhea, a weight loss of 13 pounds, shortness of breath, discomfort in the abdomen, and swelling of the feet.

Dr. Kloempken noted in his records that "He [Nolan] was told around 1957 that he had pulmonary fibrosis secondary to asbestosis." The doctor stated that this was medical terminology. He also stated under questioning by different counsel, alternatively, that he did not know whether the precise words used were Nolan's, and later, that Nolan did tell him so in those words. Finally, the doctor testified he was paraphrasing what Nolan told him.

On May 15, 1973, Dr. Kloempken diagnosed Nolan's condition as asbestosis and tuberculosis. Nolan had ceased working on May 11, 1973, and never did return to work. The complaint in this cause was filed May 9, 1975.

The issue in this case is whether the two-year statute of limitations which governs personal injury actions (Ill. Rev. Stat. 1977, ch. 83, par. 15) bars this action. As a preliminary contention the defendants argue that the discovery rule, which this court has applied to a number of actions, has no application in a strict liability action of this sort. In *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, where this court applied the discovery rule to a strict tort liability action, it was stated:

> "[W]e have held that an action to recover for personal injuries resulting from a sudden traumatic event accrues when plaintiff first knew of his right to sue, *i.e.* at the time when the injury occurred. [Citations.] Although we have not specifically held this rule applicable to a products liability claim [citation], refusal to do so would emasculate much of the consumer protection afforded

by *Suvada* [*v. White Motor Co.* (1965), 32 Ill. 2d 612.]" 45 Ill. 2d 418, 432.

In *Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, a cause of action in strict tort liability involving the sale of a contraceptive pill was said to accrue when the plaintiff suffered a stroke. "From plaintiff's description of the severity of her condition in the complaint and her reply brief it is inconceivable that her injury was not occasioned by a traumatic event and that she knew of this injury more than two years prior to the filing of her complaint." 56 Ill. 2d 548, 559.

It is important to recognize that in *Williams* this court rejected the contention that the statute of limitations began to run when the allegedly defective trenching machine left the manufacturer's control. In *Berry* we held that the cause of action in tort accrued when the plaintiff suffered a stroke and not when the pill was manufactured, sold or consumed. (56 Ill. 2d 548, 559; see *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 135.) Thus in *Williams* and *Berry*, with reference to the strict tort liability counts, the statute was held to commence to run when the plaintiffs knew or should have known of their injuries, which were suffered as part of traumatic events.

In *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 70, this court said that whether to apply the discovery rule to a particular type of action involves "balancing the increase in difficulty of proof which accompanies the passage of time against the hardship to the plaintiff who neither knows nor should have known of the existence of his right to sue. There are some actions in which the passage of time, from the instant when the facts giving rise to liability occurred, so greatly increases the problems of proof that it has been deemed necessary to bar plaintiffs who had not become aware of their rights of action within the statutory period as measured from the time such facts occurred. (See

*Skinner v. Anderson,* 38 Ill. 2d 455, 458; *New Market Poultry Farms, Inc. v. Fellows,* 51 N.J. 419, 241 A.2d 633.) But where the passage of time does little to increase the problems of proof, the ends of justice are served by permitting plaintiff to sue within the statutory period computed from the time at which he knew or should have known of the existence of the right to sue." We think the instant case is a prime example of where, though the passage of time does create problems of proof, those problems are outweighed by the hardship to the plaintiff who neither knows nor reasonably should know that he is being injured. In the instant case, the defendants deposed Nolan to discover the particulars of when and where he used their products. Also, records relative to the sale of these products should still be extant in many cases. Additionally, in a case such as this, it is difficult to pinpoint a precise time when an injury occurred. As was stated in *Urie v. Thompson* (1949), 337 U.S. 163, 169, 93 L. Ed. 1282, 1292, 69 S. Ct. 1018, 1024, where the plaintiff, a railroad fireman, had contracted silicosis:

> "If Urie were held barred from prosecuting this action because he must be said, as a matter of law, to have contracted silicosis prior to November 25, 1938, it would be clear that the federal legislation afforded Urie only a delusive remedy. It would mean that at some past moment in time, unknown and inherently unknowable even in retrospect, Urie was charged with knowledge of the slow and tragic disintegration of his lungs; under this view Urie's failure to diagnose within the applicable statute of limitations a disease whose symptoms had not yet obtruded on his consciousness would constitute waiver of his right to compensation at the ultimate day of discovery and disability." (337 U.S. 163, 169, 93 L. Ed. 1282, 1292, 69 S. Ct. 1018, 1024.)

Thus when the problems of proof are weighed against the fact that Nolan could not possibly have been aware of his injury until, at the earliest, 1957, when the first symptoms began to appear, the discovery rule must be applied to this action. See *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 41.

We need next consider the precise extent of the discovery rule in a case such as the instant one, where the injury involved did not arise out of a "sudden traumatic event." It is argued by the defendants to this action that if indeed the discovery rule applies to this case, then it should be said to mean that Nolan's cause of action accrued when he knew or should have known of his injury, in which case, the defendants say, the statute would have begun to run in either 1957 or 1965. Alternatively, the defendants argue that the cause of action could be said to accrue when Nolan possessed knowledge, actual or constructive, of an injury and that it was wrongfully caused, in which case, the defendants argue, the statute would start to run sometime between 1968 and 1972, when the green sheets were published.

The appellate court, however, held that the cause of action accrued when "Nolan knew or, in the exercise of reasonable diligence, should have discovered that he had contracted the disease asbestosis due to defendants' acts or omissions which would have entitled him to proceed against them." The court stated that this question was one to be decided by the trier of fact.

We are of the opinion that the preferred rule is that the cause of action accrues when the plaintiff knows or reasonably should know of an injury and also knows or reasonably should know that the injury was caused by the wrongful acts of another.

Such a rule is supported by the weight of authority in our appellate court. (See, *e.g., Ikenn v. Northwestern Memorial Hospital* (1979), 73 Ill. App. 3d 694, 695;

*Kristina v. St. James Hospital* (1978), 63 Ill. App. 3d 810, 812; *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 713; *Wigginton v. Reichold Chemicals, Inc.* (1971), 133 Ill. App. 2d 776, 779-80; *McDonald v. Reichold Chemicals, Inc.* (1971), 133 Ill. App. 2d 780, 782.) Moreover, this rule is similar to the rule applicable to malpractice claims under the Federal Tort Claims Act (*United States v. Kubrick* (1979), 444 U.S. 111, 62 L. Ed. 2d 259, 100 S. Ct. 352 (the claim accrues when the plaintiff knows or should know of the injury and its cause)), as well as in accord with authorities from other jurisdictions involving injuries caused by exposure to asbestos materials (*Harig v. Johns-Manville Products Corp.* (1978), 284 Md. 70, 82, 394 A.2d 299, 306; *Karjala v. Johns-Manville Products Corp.* (8th Cir. 1975), 523 F.2d 155, 160-61 (applying Minnesota law); see *Borel v. Fiberboard Paper Products Corp.* (5th Cir. 1973), 493 F.2d 1076, 1101-02, *cert. denied* (1974), 419 U.S. 869). Finally, this rule is in accord with two of our own opinions, where this issue has been discussed but not decided (*Witherell v. Weimer* (1981), 85 Ill. 2d 146; *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 135 (citing with approval *Wigginton v. Reichold Chemicals, Inc.* (1971), 133 Ill. App. 2d 776)). Also, see generally Note, *The Evolution of Illinois Tort Statutes of Limitations: Where Are We Going and Why?*, 53 Chi.-Kent L. Rev. 673 (1977).

We wish to emphasize that the rule we announce is not the same as a rule which states that a cause of action accrues when a person knows or should know of both the injury and the defendants' negligent conduct. Not only is such a standard beyond the comprehension of the ordinary lay person to recognize, but it assumes a conclusion which must properly await legal determination. (*United States v. Kubrick* (1979), 444 U.S. 111, 124, 62 L. Ed. 2d 259, 271, 100 S. Ct. 352, 360-61.) Moreover, if knowledge of

negligent conduct were the standard, a party could wait to bring an action far beyond a reasonable time when sufficient notice has been received of a possible invasion of one's legally protected interests. (See Restatement (Second) of Torts sec. 7 (1965) (definition of an injury)). Also, such a rule would seem contrary to the underlying purpose of statutes of limitations, which is to "require the prosecution of a right of action within a reasonable time to prevent the loss or impairment of available evidence and to discourage delay in the bringing of claims." *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 132; *United States v. Kubrick* (1979), 444 U.S. 111, 117, 62 L. Ed. 2d 259, 266, 100 S. Ct. 352, 357.

We hold, therefore, that when a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused, the statute begins to run and the party is under an obligation to inquire further to determine whether an actionable wrong was committed. In that way, an injured person is not held to a standard of knowing the inherently unknowable (*Urie v. Thompson* (1949), 337 U.S. 163, 169, 93 L. Ed. 1282, 1292, 69 S. Ct. 1018, 1024), yet once it reasonably appears that an injury was wrongfully caused, the party may not slumber on his rights. The question of when a party knew or reasonably should have known both of an injury and its wrongful cause is one of fact, unless the facts are undisputed and only one conclusion may be drawn from them. *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156.

In the instant case, Nolan knew he had lung problems in 1957, and he knew he had pulmonary fibrosis in 1965. It was not until May 15, 1973, that he was told by a doctor that he had asbestosis and that his condition was caused by exposure to asbestos materials at work. The evidence is conflicting as to whether or when Nolan would have had sufficient information to reach such a conclusion

earlier. The resolution of this question is not the province of this court. It is a question of fact, and in this case, a seriously disputed one. Accordingly, summary judgment, which requires that no genuine issues of material fact exist (Ill. Rev. Stat. 1977, ch. 110, par. 57), is not an appropriate remedy here. Therefore, for the reasons stated, the judgment of the appellate court is affirmed and this matter is remanded to the circuit court for proceedings consistent with this opinion.

*Affirmed and remanded.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.