PHOEBE CAROL STEWART *et al.*, Plaintiffs-Appellants, v. THE COUNTY OF COOK *et al.*, Defendants-Appellees.

First District (4th Division) No. 1—87—2497

Opinion filed December 21, 1989.

849

Michael W. Rathsack, of Chicago, for appellants.

Cecil A. Partee, State's Attorney, of Chicago (Raymond J. Prosser, Special Assistant State's Attorney, of counsel), for appellees.

JUSTICE McMORROW delivered the opinion of the court:

Plaintiff Phoebe Stewart (Stewart) and her husband (hereinafter collectively the plaintiffs) filed suit against defendants Cook County Hospital (the Hospital) and certain physicians employed by the Hospital (hereinafter collectively the defendants) to recover for injuries allegedly sustained as a consequence of medical malpractice committed by defendants in 1983. Defendants motioned to dismiss the complaint on the grounds that (1) plaintiffs' notice to defendants was given more than one year after plaintiffs knew or should have known of the injuries and of their wrongful cause; (2) plaintiffs' notice to defendants was factually deficient; and (3) plaintiffs' exclusive remedy against the defendants was under the Illinois Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.5(a)). The trial court allowed the motion to dismiss, dismissed plaintiffs' complaint with prejudice, and found no just reason to delay enforcement or appeal. Plaintiffs appeal from this ruling.

Upon review, we conclude that the record does not establish, as a matter of law, that plaintiffs knew or should have known of their cause of action against defendants more than a year prior to notice to the defendants. We further determine that the notice given to the defendants was not fatally defective. We also conclude that the record does not demonstrate, as a matter of law, that plaintiffs' exclusive remedy falls under the Workers' Compensation Act. Accordingly, we reverse and remand.

According to the record, Phoebe Stewart was working as a nurse at Cook County Hospital on September 18, 1983, when she experienced blurred vision in her right eye. She went to the Hospital's emergency room and was thereafter admitted to the Hospital as an inpatient, where she was treated by physicians employed by the Hospital. Stewart underwent surgery at the Hospital on September 30, 1983, for innominate artery occlusive disease. She alleged in her complaint that during the surgery, the defendants negligently compromised her cerebral circulation for an excessive amount of time, causing her to suffer left hemiparesis (paralysis) and other injuries. Stewart and her husband filed suit against defendants on May 24, 1985, alleging medical malpractice and loss of consortium.

A few months before the complaint was filed, on March 19, 1985,

plaintiffs served notice of injury upon the Hospital. In this notice, plaintiffs recited *inter alia* that Stewart's surgery was performed on September 24, 1983, rather than the correct date of September 30, 1983.

Defendants answered plaintiffs' complaint and thereafter filed a motion to dismiss the pleading based on section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619). Defendants attached to this motion excerpts of Stewart's deposition testimony which, according to defendants, indicated that Stewart knew of her injury and its wrongful cause in February 1984 or April 1984. On this basis, defendants asserted that plaintiffs had not timely notified them within one year of discovery of their causes of action, as required under the Local Governmental and Governmental Employees Tort Immunity Act (hereinafter Tort Immunity Act) (Ill. Rev. Stat. 1985, ch. 85, par. 8—102). Defendants also claimed that plaintiffs' notice was defective because it misstated the date of surgery as September 24, 1983, rather than September 30, 1983. Lastly, defendants argued that plaintiffs' exclusive remedy was under the Workers' Compensation Act, because Stewart was an employee of the Hospital, developed symptoms of her illness while working at the Hospital, and was treated by Hospital physicians. The trial court granted defendants' motion to dismiss, and plaintiffs appeal.

■■ ■ Defendants argue that plaintiffs' suit was barred because plaintiffs did not notify defendants of their claims within the one-year time limitation set forth in the Tort Immunity Act. (Ill. Rev. Stat. 1985, ch. 85, par. 8—102.) It has been held that the discovery rule applies to this one-year notice requirement in medical malpractice suits against local public entities. (*Rio v. Edward Hospital* (1984), 104 Ill. 2d 354, 472 N.E.2d 421.) Under the discovery rule, "a cause of action accrues when a plaintiff knows or reasonably should know of an injury and also knows or reasonably should know that it was wrongfully caused. [Citations.]" (*Rio*, 104 Ill. 2d at 361.) A plaintiff "reasonably should know that [the injury] was wrongfully caused" when the plaintiff "possesse[s] *** sufficient information concerning [the] injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 416, 430 N.E.2d 976.) By adopting this rule, "an injured person is not held to a standard of knowing the inherently unknowable, [citation] yet once it reasonably appears that an injury was wrongfully caused, the party may not slumber on his rights." *Nolan v. Jones-Manville Asbestos* (1981), 85 Ill. 2d 161, 171, 421 N.E.2d 864.

The defendants argue that Stewart reasonably knew, in February

1984, that she had sustained an injury that was wrongfully caused during her surgery at the Hospital in September 1983. The defendants claim that in her deposition testimony, Stewart said that it was in February 1984 that she first thought her care at the Hospital might have been improper. Stewart's deposition testimony does not contain such a blanket admission, however. The record reveals the following colloquy between plaintiff and defendant's counsel:

"Q. [Defendant's attorney]: Has anyone ever told you that there was any negligence in the care rendered to you at Cook County Hospital?

A. [Plaintiff]: I think Dr. Jensen [plaintiff's subsequent treating physician] mentioned there could be after *** [he] did that CAT scan, he did mention that this ***.

Q. [Defendant's attorney]: After he did the CAT scan, he did mention it?

A. Yes.

Q. All right. When did he mention that?

* * *

A. *** The week of February the 4th, [1984] ***.

* * *

Q. Okay. It was during that week that he told you—.

A. Yes.

Q. —of the negligence?

[Plaintiff's attorney]: Excuse me. That is not what she said. She did not say that, and that's a mischaracterization of her testimony.

[Defendant's attorney]: All right.

[Plaintiff's attorney]: She has not described for you what the doctor may have said about the CAT scan.

[Defendant's attorney]: I'm about to ask that.

Q. Exactly what did he tell you during that conversation?

A. He said the CAT scan showed some brain damage, so it's a possibility I could have suffered a stroke during my surgery.

* * *

Q. Did he say anything else about this idea of negligence in the operation at Cook County Hospital?

[Plaintiff's attorney]: Excuse me. I object to that. You are trying to put words in her mouth. She has not said at that point in time the doctor said anything about negligence. He said—essentially he reported the results of the CAT scan. You are injecting negligence or conclusions regarding negligence into that reported statement at that time. We know why you're

doing that, and I object.

Q. [Defendant's attorney]: Did he indicate at all whether there had been any negligence in your treatment at Cook County Hospital?

A. No.

Q. Not during that conversation; is that your testimony?

A. Yes.

Q. Did he ever indicate there was any negligence in your care or treatment at Cook County Hospital?

A. No.

\* \* \*

Q. When he told you that, when he told you that you had had brain damage, according to the CAT scan, what, if anything, in your own mind did you conclude from that statement regarding your treatment at Cook County Hospital?

A. I didn't know what to say.

Q. Did you think there had been any negligence or deficiency in the treatment rendered to you?

A. All I know—wanted to know, what was wrong, what went wrong. I didn't know. The doctors there didn't tell me anything, so I didn't know."

■ Based upon Stewart's deposition testimony, we cannot say, as a matter of law, that Stewart realized, in February 1984, that she had sustained an injury that had been wrongfully caused by defendants. Stewart's initial answers appear to indicate that she had been told by her treating physician, in February 1984, that the surgery she received at the Hospital had been negligently performed. However, Stewart thereafter specified that her treating physician only told her, in February 1984, that she might have had a stroke during the surgery in September 1983, and that the physician said nothing to her in this conversation to indicate that the possible stroke had been caused by negligence by the defendants during the surgery. Because Stewart's deposition testimony contains conflicting factual evidence, it does not establish as a matter of law that Stewart knew of her injury and its wrongful cause in February 1984. Plaintiffs and defendants have demanded a jury trial, and therefore, this factual question must be resolved by a jury. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—619(c); see also, e.g., Colley v. Swift & Co. (1984), 129 Ill. App. 3d 812, 473 N.E.2d 364.) For these reasons, we find Stewart's deposition testimony relative to the extent of her knowledge, in February 1984, insufficient basis to sustain the trial court's dismissal of the plaintiffs' complaint on the ground that Stewart had knowledge of the defend-

ants' alleged negligence in February 1984 and failed to timely notify defendants.

The defendants also contend that Stewart's deposition testimony indicated that she concluded in April 1984 that the defendants "did something wrong during the course of [the] operation." On this basis, defendants assert that Stewart's notice to them, in March 1985, was timely but nevertheless factually insufficient, because the March 1985 notice stated that the surgery occurred on September 24, 1983, when it actually occurred on September 30, 1983. Defendants observe that section 8—102 of the Tort Immunity Act requires that the notice contain in substance certain information regarding the injury, including the date thereof. Ill. Rev. Stat. 1985, ch. 85, par. 8—102.

■ Defendants maintain that the inaccuracy regarding the date of Stewart's surgery renders the notice automatically invalid, without regard to whether the misstatement of the date of surgery misled or prejudiced them. To support their argument, defendants cite to *Williams v. City of Gibson* (1970), 129 Ill. App. 2d 431, 263 N.E.2d 138 (notice defective because of one-day error in date of injury given in notice), *Riddle v. City of Marion* (1963), 44 Ill. App. 2d 11, 193 N.E.2d 877 (one-month error in date of injury), and *Frowner v. Chicago Transit Authority* (1960), 25 Ill. App. 2d 312, 167 N.E.2d 26 (three-day error in date of injury). Each of these decisions was handed down before the 1973 amendment to section 8—102, which changed the provision to require that the notice "give in substance" certain information, in order to "ameliorate the harshness caused by the rigid application of the prior section. [Citation.]" (*Rio*, 104 Ill. 2d at 366.) Under the present statutory enactment, to satisfy section 8—102 of the Tort Immunity Act, a plaintiff's notice to the local public entity must contain "each element of information required by the Act *** [and] each element must be set forth with sufficient clarity and accuracy so as not to mislead or prejudice the public entity." *Lando v. City of Chicago* (1984), 128 Ill. App. 3d 597, 600, 470 N.E.2d 1172; see also *Carroll v. Chicago Housing Authority* (1987), 155 Ill. App. 3d 710, 508 N.E.2d 285.

As a result, an inaccuracy with respect to a certain element required under section 8—102 renders the notice invalid when the public entity is misled or prejudiced by the misstatement. (See, *e.g., Brooks v. City of Chicago* (1982), 106 Ill. App. 3d 459, 435 N.E.2d 1182 (misstatement in location of injury as occurring on public sidewalk rather than on public street did not invalidate notice); *Smith v. City of Chicago* (1980), 92 Ill. App. 3d 247, 416 N.E.2d 20 (one-year misstatement in date of injury rendered notice invalid).) We find nothing in

this record to indicate that the defendants were prejudiced or misled by plaintiffs' misstatement of the date of Stewart's surgery by six days, and defendants do not argue that they were prejudiced or misled by this inaccuracy. Consequently, we conclude that plaintiffs' March 1985 notice to defendants substantially complied with the requirements of section 8—102 of the Tort Immunity Act.

■ The defendants also maintain that the plaintiffs' complaint was properly dismissed because the plaintiffs' exclusive remedy was under the Workers' Compensation Act, which provides in pertinent part:

"No common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury." Ill. Rev. Stat. 1979, ch. 48, par. 138.5(a).

■ In order to determine whether plaintiffs' exclusive remedy was through the workers' compensation system, we must consider whether the injuries plaintiffs allegedly sustained are compensable under the Act. The Illinois Supreme Court has set forth the following guidelines with respect to this question:

"An injury will be found to be compensable if it 'aris[es] out of and in the course of the employment.' [Citation.] 'Arising out of' refers to the causal connection between the employment and the accidental injury, which exists when the injury's origin is in some risk related to the employment. [Citations.] The requirement that the injury occur 'in the course of' employment is concerned with the 'time, place, and circumstances of the injury.' [Citation.] An injury will generally be found to arise 'in the course of the employment when it occurs within the period of employment at a place where the employee may reasonably be in the performance of his duties, and while he is fulfilling those duties or engaged in something incidental thereto.' [Citation.]" *Unger v. Continental Assurance Co.* (1985), 107 Ill. 2d 79, 85-86, 481 N.E.2d 684.

See also *Caterpillar Tractor Co. v. Industrial Comm'n* (1989), 129 Ill.

2d 52, 541 N.E.2d 665.

The record in the case at bar demonstrates that Stewart's injuries arose "in the course of" her employment at the Hospital, since she alleged in her complaint that she was performing her duties as a nurse at the Hospital when she experienced blurred vision in her right eye. The more difficult question is whether her injuries "arose out of" her employment, *i.e.*, whether there is a causal connection between her alleged injury and her employment.

In *Unger v. Continental Assurance Co.* (1985), 107 Ill. 2d 79, 481 N.E.2d 684, the plaintiff alleged that he was injured by the failure of his employer's company physician to properly diagnose plaintiff's lung cancer during an examination at the company clinic. The record indicated that it was the employer's company policy to require that all employees submit to such annual physical examinations, and that plaintiff had been told his employment would be terminated if he did not undergo the examination. The Illinois Supreme Court determined that plaintiff's alleged injury "arose out of" his employment relationship because the physical examination was mandatory and was therefore " 'determined by the demands of his employment rather than personal factors' " (*Unger*, 107 Ill. 2d at 88, quoting *Sjostrom v. Sproule* (1965), 33 Ill. 2d 40, 43-44, 210 N.E.2d 209) and constituted a "condition of employment [that] aggravated the disease" (*Unger*, 107 Ill. 2d at 89, discussing *Field Enterprises v. Industrial Comm'n* (1967), 37 Ill. 2d 335, 226 N.E.2d 867). Although the issue of whether an alleged injury is compensable under the Act is usually a question of fact, the court determined that summary judgment was properly entered in *Unger* because the facts were undisputed and established as a matter of law that the alleged injuries were governed by the Act. We note that the court in *Unger* specifically referred to *McNeil v. Diffenbaugh* (1982), 105 Ill. App. 3d 350, 434 N.E.2d 377, upon which defendants rely in the case at bar, and stated, "[W]e find that the 'status' approach utilized in *McNeil* oversimplifies a compensability analysis—status being just one of the factors to consider ***." (*Unger*, 107 Ill. 2d at 87.) Accordingly we cannot conclude that the court's reasoning in *McNeil* is dispositive on this issue in the instant cause.

■ Applying the reasoning of *Unger* to the case at bar, we conclude that the record does not establish as a matter of law that plaintiffs' injuries are governed by the Workers' Compensation Act. Stewart's deposition testimony indicates that Stewart went to the Hospital's emergency room because Stewart's supervisor "told" Stewart to do so. This deposition testimony does not prove that

Stewart went to the Hospital's emergency room because she was ordered to do so by her supervisor. Thus the record in the instant cause does not establish that Stewart went to the emergency room of Cook County Hospital because of "the demand of [her] employment rather than personal factors." (*Unger*, 107 Ill. 2d at 88.) Nor does the record establish that it was a "condition of employment" (*Unger*, 107 Ill. 2d at 89) that Stewart present herself to the Hospital's emergency room rather than seek consultation with her personal physician. In addition, the record indicates that the costs of Stewart's medical treatment were paid by her private insurance carrier, not by the Hospital's workers' compensation insurance carrier. It is also noteworthy that Stewart had been previously treated for similar symptoms by her private physician and hospitalized at a facility other than her employer's for these symptoms. In light of all these circumstances, we cannot say on this record that, as a matter of law, Stewart's exclusive recourse was a claim for worker's compensation. Consequently, the exclusive remedy provision of the Workers' Compensation Act is insufficient ground to dismiss plaintiffs' complaint.

The defendants argue that plaintiffs' claim must be analyzed in the context of the dual persona doctrine. This doctrine provides an exception to the general rule of employer immunity embodied in section 5(a) of the Illinois Workers' Compensation Act. Under the dual persona doctrine, an employee who sustained injuries that arose out of and in the course of his employment "may nevertheless recover from his employer where it is shown that the tortious conduct [of the employer] occurred while the 'employer *** was *** acting as a separate legal entity.' " *Robinson v. KFC National Management Co.* (1988), 171 Ill. App. 3d 867, 870, 525 N.E.2d 1028, quoting *Sharp v. Gallagher* (1983), 95 Ill. 2d 322, 328, 447 N.E.2d 786.

In each of the cases upon which the defendants rely to support their argument that plaintiffs' claim must be analyzed according to the dual persona doctrine, the employee's injuries had arisen out of and in the course of the employee's employment. (*Sharp v. Gallagher*, 95 Ill. 2d 322, 447 N.E.2d 786 (employer's medical staff allegedly failed to diagnose non-work-related disease during medical staff's examination and treatment of plaintiff for injuries arising out of and in course of employment); *McCormick v. Caterpillar Tractor Co.* (1981), 85 Ill. 2d 352, 423 N.E.2d 876 (foot injury arising out of and in course of employment aggravated by alleged medical malpractice of employer's medical staff); *Mufich v. Heisler Green Chemical Co.* (1984), 121 Ill. App. 3d 958, 460 N.E.2d 582 (foot injury arising out of and in course of employment aggravated by alleged medical malpractice of

employer's medical staff); *McNeil v. Diffenbaugh* (1982), 105 Ill. App. 3d 350, 434 N.E.2d 377 (employer's medical staff allegedly failed to diagnose non–work-related disease during medical staff's examination and treatment of plaintiff for injuries arising out of and in course of employment).) In the case at bar, Stewart's original symptoms of dizziness were non-work related. She was treated for these symptoms by her private physician and hospitalized at a facility other than her employer's. There is nothing in the record to suggest that the occurrence of Stewart's blurred vision while on the job at the Hospital was related to her employment at the Hospital and, as stated more fully above, the record does not establish that Stewart's injuries arose out of her employment at the Hospital. As a result, the record does not demonstrate that Stewart's injuries were compensable under workers' compensation. Because it does not appear that Stewart's injuries were governed by the Workers' Compensation Act, the dual persona doctrine, which stands as an exception to the general rule of employer immunity embodied in section 5(a) of the Act, is inapplicable to the case at bar.

■■ We note in closing Stewart's argument that, once defendants filed an answer that denied the allegations of her complaint, defendants could not thereafter properly file a section 2—619 motion to dismiss that admitted all well-pleaded facts in her complaint. It has been held that "[f]iling a motion to dismiss [under section 2—619] does not preclude later filing an answer, and filing an answer does not preclude later filing a section 2—619 motion to dismiss. [Citations.]" (*Outlaw v. O'Leary* (1987), 161 Ill. App. 3d 218, 220, 514 N.E.2d 208; see also *Bailey v. Petroff* (1988), 170 Ill. App. 3d 791, 799, 525 N.E.2d 278.) Even assuming *arguendo* the procedural deficiency which Stewart claims, we cannot say on this record that she was prejudiced thereby. See, *e.g., Downers Grove Associates v. Red Robin International, Inc.* (1986), 151 Ill. App. 3d 310, 502 N.E.2d 1053.

For the reasons stated, the order of the circuit court is reversed, and the cause remanded for further proceedings consistent herewith.

Reversed and remanded.

JIGANTI, P.J., and JOHNSON, J., concur.