**John SCHULTZ and Joann Schultz, Plaintiffs,**

v.

**KEENE CORPORATION, et al., Defendants.**

**No. 86 C 5431.**

United States District Court, N.D. Illinois, E.D.

Jan. 29, 1990.

Terrence M. Johnson, Chicago, Ill., for John Schultz and Joann Schultz.

Daniel J. Cheely, Paul B. O'Flaherty, Jr., John A. Krivicich and Andrew J. Boling, Baker & McKenzie, Chicago, Ill., for ACandS Inc.

Howard K. Priess, II, Andrew Kopon, Jr., Jennifer Jerit Johnson, Kathleen M. Gibson and Mary Jane Chapman, Tressler, Soderstrom, Maloney & Priess, Chicago, Ill., for Flintkote Co.

John Dames, Eric Quandt, Julian Solotorovsky and Tammi C. Bornstein, Kelley, Drye & Warren, Chicago, Ill., and Ruth V. Enright and Robert L. Martier, Lundblad & Baker, Chicago, Ill., for Owens–Corning Fiberglas Corp.

Robert H. Riley, Barbara E. Hermansen and Sam V. Menegas, Schiff Hardin & Waite, and James K. Toohey, Ross & Hardies, Chicago, Ill., for Fibreboard Corp.

Robert H. Riley, Barbara E. Hermansen and Sam V. Menegas, Schiff Hardin & Waite, Chicago, Ill., for Owens–Illinois, Inc., and Pittsburgh Corning Corp.

Christopher P. Larson, David Sinn, Heyl, Royster, Voelker & Allen, Peoria, Ill., for Armstrong World Industries, Inc., Keene Corp., National Gypsum Co. and T & N, plc.

## ORDER

BUA, District Judge.

Plaintiff John Schultz claims to be suffering from asbestosis. He initiated this diversity action against a host of asbestos sellers, manufacturers, and distributors. Some of these defendants have moved for summary judgment. For the reasons stated herein, the court grants summary judgment in favor of defendants AC & S, Inc., Fibreboard Corporation, and Pittsburgh Corning Corporation. With respect to defendant Owens–Illinois, Inc., summary judgment is entered only on Count I of plaintiffs' complaint. The motion for summary judgment of defendants Armstrong World Industries, Inc., Keene Corporation, National Gypsum Company, Owens–Corning Fiberglas Corporation, T & N, plc, and The Flintkote Company is denied.

## FACTS

Since 1955, John Schultz has worked as a sheet metal worker. Over this period of time, he worked at numerous industrial and commercial job sites throughout the Chicago area and the Midwest. Schultz was exposed to asbestos at many of these job sites. In 1983, Schultz' neighbor (who was also a sheet metal worker) died from lung cancer caused by his long-term exposure to asbestos. Prompted in part by the death of his neighbor, Schultz went to Henrotin Health and Fitness Center for a physical examination. When Schultz' chest X-ray revealed cloudiness in his lungs, he was referred to a pulmonologist for further examination. Dr. James West, the pulmonologist who examined Schultz, told him that the irregularity in his lungs could be asbestos related, and that he was at risk of developing lung cancer. Although Schultz experienced shortness of breath, he claims to have been unaware that he was suffering from asbestosis until 1986.

On July 25, 1986, Schultz instituted this tort action against 21 corporations that are allegedly responsible for his exposure to asbestos.[1] Schultz asserts claims based on strict liability, negligence, and willful and wanton conduct. In addition, Schultz' wife asserts a claim for loss of consortium.

## DISCUSSION

A court should enter summary judgment only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). All reasonable inferences are drawn in a light most favorable to the non-movant. *Mays v. Chicago Sun–Times*, 865 F.2d 134, 136 (7th Cir.1989). Defendants have filed separate motions for summary judgment, which the court will now consider.

### I. Fibreboard Corporation, Owens–Illinois, Inc., and Pittsburgh Corning Corporation

Defendants Fibreboard Corporation ("Fibreboard"), Owens–Illinois, Inc. ("Owens–Illinois"), and Pittsburgh Corning Corporation ("Pittsburgh Corning") argue that they are entitled to summary judgment for three reasons: plaintiffs' claims are barred by the statute of limitations; plaintiffs' strict liability claim is barred by the statute of repose; and John Schultz was not exposed to any asbestos products manufactured by these defendants.

#### A. Statute of Limitations

Under Illinois law—the substantive law which governs this diversity case—an action for personal injury must be commenced within two years after the cause of action accrued. Ill.Rev.Stat. ch. 110, para. 13–202 (1987). A cause of action accrues "when a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused." *Nolan v. Johns–Manville Asbestos*, 85 Ill.2d 161,

1. The following corporations are named defendants: AC & S, Inc.; Armstrong World Industries, Inc.; Carey Canada, Inc.; Crown Cork & Seal Co.; Eagle–Picher Industries, Inc.; Fibreboard Corporation; H.K. Porter Company, Inc.; Keene Corporation; National Gypsum Company; Nicolet Inc.; Owens–Corning Fiberglas Corporation; Owens–Illinois, Inc.; Pittsburgh Corning Corporation; Raymark Industries Inc.; Rock Wool Mfg. Co., Inc.; Ryder Industries; Standard Asbestos Manufacturing; The Celotex Corporation; The Flintkote Company; Turner & Newall, Ltd.; and W.R. Grace Company.

171, 52 Ill.Dec. 1, 4, 421 N.E.2d 864, 868 (1981).

The statute of limitations must be carefully scrutinized in asbestosis cases. In contrast to many personal injuries which result from a sudden traumatic event occurring at a fixed point in time, asbestosis develops slowly and insidiously. *Nolan v. Johns–Manville Asbestos & Magnesia Materials Co.*, 74 Ill.App.3d 778, 788, 30 Ill. Dec. 307, 315, 392 N.E.2d 1352, 1360 (1st Dist.1979), *aff'd*, 85 Ill.2d 161, 52 Ill.Dec. 1, 421 N.E.2d 864 (1981). Asbestosis progresses subtly over a long period of time, taking anywhere from 10 to 25 years after initial exposure before the disease manifests itself. *Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1486 (11th Cir.1985). Therefore, a mechanical application of the statute of limitations in such cases would produce draconian results. As Illinois Appellate Court Justice Hartman cogently remarked in *Nolan:*

> Requiring the filing of a lawsuit before the potentially serious consequences of exposure to a dangerous and defective product can possibly be known or become known for a period perhaps of from ten to twenty-five years, could destroy a just and meaningful claim for injuries simply for want of knowledge or proof and thereby nullify any realistic redress available to an injured party.

*Nolan*, 74 Ill.App.3d at 788, 30 Ill.Dec. at 315, 392 N.E.2d at 1360.

In *Nolan*, the plaintiff was an asbestos insulator who began experiencing problems with his lungs in the late 1950s. *Id.* at 780, 30 Ill.Dec. at 309, 392 N.E.2d at 1354. By 1965, he was diagnosed as having pulmonary fibrosis. *Id.* at 781, 30 Ill.Dec. at 310, 392 N.E.2d at 1355. The plaintiff, however, did not file his complaint until 1975. *Id.* at 785, 30 Ill.Dec. at 312, 392 N.E.2d at 1357. Because there was conflicting evidence as to whether he should have known of the illness sooner, the court held that summary judgment based on the statute of limitations was inappropriate. *Id.* at 794, 30 Ill.Dec. at 319, 392 N.E.2d at 1364; *see also Healy v. Owens–Corning Fiberglas*, 187 Ill.App.3d 182, 134 Ill.Dec. 827, 543

N.E.2d 110 (1st Dist.1989). The Illinois Supreme Court affirmed. 85 Ill.2d at 172, 52 Ill.Dec. at 6, 421 N.E.2d at 869.

Similarly, in the case at bar, there is a serious dispute as to when Schultz reasonably should have known that he had sustained asbestos-related injuries. Defendants argue that Schultz had reason to know that he had asbestosis in 1983—over two years prior to the filing of the instant case. In 1983, Schultz' neighbor, a fellow sheet metal worker, died from exposure to asbestos. That same year, Schultz was told by two different physicians that there was "cloudiness" in his lungs. One of those physicians, Dr. West, claims that he specifically informed Schultz that the cloudiness was a result of asbestosis. Nonetheless, Schultz and his wife adamantly deny that West ever told either of them that Schultz had asbestosis. To the contrary, West allegedly assured both of them that Schultz' breathing tests were normal. In a letter dated July 29, 1983, West informed Schultz that his pulmonary function test was "almost completely normal" and that he was happy with Schultz' pulmonary function. Based on this favorable letter, Schultz maintains that he had no reason to know that he had suffered any injury due to his exposure to asbestos. He claims that he felt physically fit and, in fact, actively participated in sports. Schultz admits that he experienced some shortness of breath, but he did not attribute it to asbestosis. According to Schultz, he did not begin experiencing a significant loss of breathing capacity until 1986. On the advice of his union representative, Schultz had his medical records reviewed. It was not until the spring of 1986, Schultz contends, that he first realized that he was suffering from an asbestos-related injury. In light of this factual dispute concerning when Schultz knew or reasonably should have known that he was injured, summary judgment would be improper.

### B. Statute of Repose

■ In Count I, plaintiffs assert a strict liability claim. Defendants contend that this claim is barred by the statute of repose, which provides that a product liability

action based on the doctrine of strict liability must be commenced "within 12 years from the date of first sale, lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of posession to its initial user, consumer, or other non-seller, whichever period expires earlier." Ill.Rev.Stat. ch. 110, para. 13–213(b) (1987).[2]

Applying this statute, the court in *Blazek v. Nicolet, Inc.*, 173 Ill.App.3d 324, 329–30, 123 Ill.Dec. 105, 109, 527 N.E.2d 568, 572 (1st Dist.1988) barred the plaintiff's strict liability claim for the asbestos-related death of her husband. The plaintiff's husband was exposed to asbestos at work from 1951 to 1952. *Id.* at 325, 123 Ill.Dec. at 106, 527 N.E.2d at 569. In 1983, he was diagnosed as having a malignant form of cancer which was caused by his exposure to asbestos. *Id.* Less than one year later, Blazek died. Blazek's wife then filed suit in 1985. *Id.* The court held that the cause of action was barred by the statute of repose because it was brought over 30 years after the decedent's exposure to asbestos. *Id.* at 329, 123 Ill.Dec. at 109, 527 N.E.2d at 572. Recognizing that the plaintiff was denied a remedy for her strict liability claim, the court emphasized the interest in finality: "The period of repose is intended to terminate the possibility of liability after a definite period of time, regardless of a potential plaintiff's lack of knowledge of his cause of action." *Id.* at 329–30, 123 Ill.Dec. at 109, 527 N.E.2d at 572 (citing *Mega v. Holy Cross Hosp.*, 111 Ill.2d 416, 422, 95 Ill.Dec. 812, 815, 490 N.E.2d 665, 668 (1986)); *see also Gates Rubber Co. v. USM Corp.*, 508 F.2d 603, 611–12 (7th Cir.1975).

Much like the plaintiff's husband in *Blazek*, John Schultz was first exposed to asbestos in the 1950s—approximately 30 years prior to the commencement of the instant case.[3] Having filed suit on July 25, 1986, plaintiffs' claim clearly falls outside of the 12–year period of repose. Therefore, defendants' motion for summary judgment with respect to Count I of plaintiffs' complaint is granted.

### C. Product Identification

Defendants also claim that they are entitled to summary judgment due to Schultz' failure to identify their products as the source of his injuries. Indeed, the identification of the asbestos products that Schultz was exposed to is a necessary element of his case. *Estate of Henderson v. W.R. Grace Co.*, 185 Ill.App.3d 523, 528, 133 Ill.Dec. 594, 597, 541 N.E.2d 805, 808 (3d Dist.1989). By showing that he worked "with or in close proximity" to defendants' asbestos products, however, Schultz can defeat the motion for summary judgment. *Blackston*, 764 F.2d at 1480. A plaintiff can also demonstrate exposure to a particular defendant's asbestos products by providing testimony of coworkers who can identify him as working with or around those products. *Odum v. Celotex Corp.*, 764 F.2d 1486, 1488 (11th Cir.1985). Likewise, if the plaintiff cannot specifically identify a particular product with a particular job site, he may still be able to withstand summary judgment if he can identify asbestos workers around whom he worked and those workers identify the products they used. *Blackston*, 764 F.2d at 1482.

Based on his own personal knowledge and the testimony of several witnesses, Schultz claims that he has sufficiently identified the products of Fibreboard, Owens–Illinois, and Pittsburgh Corning.

### 1. Fibreboard

Aside from Schultz' overly broad assertion that he may have been exposed to a Fibreboard product at the Mars Candy Company job site, there is absolutely nothing to suggest that Schultz ever worked with or in close proximity to a Fibreboard product. In his affidavit, Schultz listed the

---

**2.** The statute of repose became effective on January 1, 1979, and it applies retroactively to any product placed into the stream of commerce prior to that date. Ill.Rev.Stat. ch. 110, para. 13–213(g) (1987).

**3.** Defendant Owens–Illinois has not even sold or manufactured any asbestos products since 1958. By 1972, defendants Fibreboard and Pittsburgh Corning had also stopped selling, manufacturing, and delivering asbestos products.

products that he was exposed to at Mars Candy, and Fibreboard was not among them. Even if a Fibreboard product was used at the Mars Candy site, "the mere proof that the plaintiff and a certain asbestos product are at the [job site] at the same time, without more, does not prove exposure to that product." *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162 (4th Cir.1986).

Nonetheless, Schultz relies on five witnesses—two asbestos workers and three sheet metal co-workers—to support his claim. Unfortunately for Schultz, not one of these witnesses can place him at a particular site, at a definite time, in close proximity to a Fibreboard product. There is simply no probative evidence which would preclude summary judgment in favor of Fibreboard.

### 2. Pittsburgh Corning

At his deposition, Schultz identified a picture of Pittsburgh Corning Unibestos and stated that it depicted a product that he was exposed to during his career. Standing alone, this conclusory declaration is insufficient to preclude summary judgment. Nowhere does Schultz connect Pittsburgh Corning with a particular job site. In Schultz' detailed 44–page affidavit, which outlines the asbestos products he came into contact with at specific job sites, Schultz failed to place a Pittsburgh Corning product at a single work site. Yet, Schultz seeks to hold Pittsburgh Corning liable through the testimony of several witnesses—none of whom can support his claim. William Thomas and Ken Buffo both worked with Schultz at numerous job sites. While they recall seeing the Pittsburgh Corning label, they could not identify a Pittsburgh Corning product with a particular job, much less confirm that Schultz worked in close proximity to a Pittsburgh Corning product. Another witness offered by Schultz is an asbestos worker named Lou Pauly. Pauly stated that Pittsburgh Corning was used widely at Chicago-area sites during the 1960s and 1970s. But Pauly did not locate Pittsburgh Corning products at specific job sites. Given the fact that he does not even know

Schultz, Pauly could not possibly identify Schultz as working at a particular site and in close proximity to a Pittsburgh Corning product. The only witness who could possibly identify Pittsburgh Corning with a particular location was Michael Lavin, an asbestos worker who is testifying in an unrelated asbestos case. Lavin stated that he recognized Pittsburgh Corning pipecovering in a pipe shaft at the Chicago Civic Center job site. Although Schultz worked at this job site from 1963–64, Lavin was not there until 1965. Assuming that Pittsburgh Corning Unibestos was present at this site, there is no solid evidence that Schultz worked anywhere near the pipecovering. The mere possibility that Schultz could have been exposed to a Pittsburgh Corning product at the Chicago Civic Center is insufficient to withstand a motion for summary judgment. *See Estate of Henderson*, 185 Ill.App.3d at 529, 133 Ill. Dec. at 597, 541 N.E.2d at 808.

### 3. Owens–Illinois

■ Contrary to Owens–Illinois' position, there is a genuine issue of fact as to whether Schultz was exposed to Owens–Illinois asbestos products. Schultz claims that between 1955 and 1960, he was exposed to Owens–Illinois asbestos products at several job sites. He specifically remembers working on a project at First Federal Bank in 1958, where he came into direct contact with asbestos pipecovering and asbestos mud that was manufactured by Owens–Illinois. Not only did he allegedly work with the pipecovering, but he also worked alongside asbestos workers who were mixing the mud. In addition, Schultz states that he was exposed to Owens–Illinois Kaylo products at various other locations, including the Campbell Soup Company, First National Bank, Hamilton Hotel, Mars Candy Company, and the Morrison Hotel. Thus, Schultz has sufficiently identified Owens–Illinois' products to survive the motion for summary judgment.

■ Regardless of Schultz' ability to identify particular asbestos products, defendants argue that the alleged exposure

was not substantial enough to cause his injuries. Pointing out that Schultz' career as a sheet metal worker spanned 34 years, defendants contend that any exposure to their products was merely "incidental." Despite Schultz' long-term exposure to asbestos, the court sees no factual basis upon which to conclude that his exposure to defendants' products was insignificant or *de minimis*. It is true that Schultz' medical condition is the result of many years of inhaling asbestos fibers. But each exposure contributed to the development of the disease. Since each inhalation of asbestos dust can result in additional damage to lung tissue, it is nearly impossible to determine which exposure is directly responsible for the disease. *Borel v. Fibreboard Paper Prods. Corp.*, 493 F.2d 1076, 1083 (5th Cir.1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974); *Blackston*, 764 F.2d at 1486. Defendants urge the court to adopt a broad rule requiring exposure to asbestos over an extended period of time before causation can be established. *See Lohrmann*, 782 F.2d at 1162–63. Such a rule, however, flies in the face of evidence which indicates that short periods of exposure—from one day to three months—can cause significant damage to the lungs. *See Workplace Exposure to Asbestos: Review and Recommendations*, U.S. Dep't of Health and Human Servs. and U.S. Dep't of Labor, DHHS (NIOSH) Publication No. 81–103, at 3 (Nov. 1980). The length of time that an individual was exposed to asbestos does not in itself determine how serious the injury will be. Several factors, including individual idiosyncrasy, the intensity of the exposure, and the nature of the contaminant all play a part in the development of the disease. *Zurich Ins. Co. v. Raymark Indus., Inc.*, 118 Ill.2d 23, 37, 112 Ill.Dec. 684, 690, 514 N.E.2d 150, 156 (1987); *Borel*, 493 F.2d at 1083.[4] In the absence of any evidence demonstrating that the exposure to defendants' products was inconsequential, the court will not minimize the danger of even a relatively light exposure. *See Borel*, 493 F.2d at 1083.

## II. The Remaining Defendants

In a separate motion for summary judgment, defendant Owens–Corning Fiberglas Corporation ("Owens–Corning") argues that it is entitled to summary judgment for only one reason: plaintiffs' claims are barred by the two-year statute of limitation. Owens–Corning is joined in the motion by defendants Armstrong World Industries, Inc., Keene Corporation, National Gypsum Company, T & N, plc, and The Flintkote Company. These defendants make the same argument that this court already rejected with respect to defendants Fibreboard, Owens–Illinois, and Pittsburgh Corning. Thus, the motion for summary judgment is denied.

Defendant AC & S, Inc. ("AC & S") also moves for summary judgment, claiming that Schultz was never exposed to one of its products. AC & S is merely an insulation contractor; it never manufactured any type of asbestos product. Instead, it purchased asbestos products, which were later installed by its own employees. As a consequence, AC & S did not supply or distribute asbestos products to anyone other than its own employees. Neither John Schultz nor any of his witnesses are able to identify an AC & S product or worker with a particular job site. In his brief, Schultz admitted this fact: "The Plaintiff does not contest the arguments made by ACandS, Inc." (Plaintiffs' Mem. in Opposition to Defendants' Motion for Summary Judgment on the Issue of Product Identification, at 2.) Accordingly, summary judgment is granted in favor of AC & S, Inc.

## CONCLUSION

For the foregoing reasons, the court grants summary judgment in favor of defendants AC & S, Inc., Fibreboard Corporation, and Pittsburgh Corning Corporation. With respect to defendant Owens–Illinois,

---

4. For a detailed explanation of how asbestos-related diseases develop, see *Zurich Ins. Co.*, 118 Ill.2d at 35–37, 112 Ill.Dec. at 690–91, 514 N.E.2d at 155–56, and *Borel*, 493 F.2d at 1083–85.

Inc., summary judgment is entered only on Count I. Finally, the court denies the motion for summary judgment of defendants Armstrong World Industries, Inc., Keene Corporation, Owens–Corning Fiberglas Corporation, National Gypsum Company, T & N, plc, and The Flintkote Company.

IT IS SO ORDERED.