RAYMOND MARTIN, Plaintiff-Appellant, v. A & M INSULATION COM-PANY *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—89—0843

Opinion filed December 20, 1990.

Burke & Burke, Ltd., of Chicago (John M. Burke and Molly C. Mason, of counsel), for appellant.

Tressler, Soderstrom, Maloney & Priess, of Chicago (Howard K. Priess II, Shaun McParland Baldwin, Andrew Kopon, Jr., and Kathleen M. Gibbons, of counsel), for appellee Flintkote Company.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Daniel J. Cheely, John A. Krivicich, and Kimberly Kentra Gralen, of counsel), for appellees Celotex Corporation, Pittsburgh Corning Corporation, Fibreboard Corporation, Keene Corporation, and Owens-Corning Fiberglas Corporation.

PRESIDING JUSTICE McMORROW delivered the opinion of the court:

Plaintiff appeals from the trial court's entry of summary judgment in favor of several asbestos manufacturers and distributors (hereinafter collectively referred to as defendants) with respect to plaintiff's claim for personal injuries arising out of plaintiff's development of asbestosis. The trial court entered summary judgment for defendants on the ground that plaintiff's suit was barred by the applicable two-year statute of limitations. (Ill. Rev. Stat. 1985, ch. 110, par. 13—202.) Because the record reveals a genuine issue of material fact with respect to whether plaintiff knew or reasonably should have known, more than two years prior to the filing of his suit, that he suffered a lung disorder caused by his exposure to asbestos, we reverse and remand.

The parties' pleadings, written interrogatories, and deposition testimony reveal the following pertinent facts. Plaintiff worked as an insulator between 1947 and 1984 and was exposed to various asbestos-containing products during this time. With regard to plaintiff's medical history, the record indicates that plaintiff was seen by a physician in June 1970, who noted certain irregularities in plaintiff's lungs but marked the "significance" of these symptoms as "undetermined." Approximately 2½ years later, in January 1973, this physician again saw plaintiff and noted that plaintiff had symptoms indicating either tuberculosis or histoplasmosis. A second physician saw plaintiff in August 1976 and noted that plaintiff had a normal chest X ray.

Plaintiff submitted to an employment examination in March 1978. With respect to this examination, plaintiff was sent a letter in which he was advised that he had chronic nonspecific pulmonary fibrotic change causing significantly decreased pulmonary function. Plaintiff was seen by his family physician in March 1978 following the employment examination. According to the family physician's records, plaintiff told the doctor that he had a cold, which may have affected the outcome of the pulmonary function tests. Plaintiff also told the physician that he was still coughing, and the physician noted that plaintiff showed "some fine rales in the lung base on inspiration." Plaintiff was told that if his symptoms became worse, he was to return for further examination.

Later, in October 1978, a chest X ray taken during hospitalization for an unrelated ailment indicated that plaintiff's lungs were normal. When plaintiff saw his family physician following hospitalization, the physician noted on his medical records that plaintiff had

a viral upper respiratory tract infection and was coughing, and that his lungs were essentially clear. The physician also noted that plaintiff had pulmonary fibrosis. At his deposition, plaintiff recalled that he had seen his family physician in October 1978, and that the physician had discussed with him the results of the March 1978 employment examination. Plaintiff remembered that his family physician had informed plaintiff that he had "bad lungs" and should change jobs so that plaintiff's "lungs don't get worse." Plaintiff gave the following deposition testimony during examination by defense counsel.

"Q. What did [the family physician] tell you about why you should quit?

A. So it doesn't get worse.

Q. So what is 'it'?

A. Whatever it is. My lungs don't get worse. I don't know which way he meant it. ***

Q. [The family physician] told you at that time you had a lung problem from your work?

A. Right. He didn't say from the work. He just says, 'You have a lung problem.' He must have meant from work, because he says 'You have worked with asbestos. It must be from work,' is what he told me.

Q. So at that time in October of 1978, *** you were aware that you had a lung problem, and you were aware that a doctor thought that you had it from work, is that right?

A. That's right, up until that time I never figured anything about my lungs. I mean, with asbestos, I didn't know that it was that bad. And I never had trouble. With my lungs that bad, I mean. So whether the age took care of making me notice it or what, I couldn't tell you.

Q. Did [the family physician] describe your lung problem with any kind of word?

A. Word, no, he just said, 'You have bad lungs,' that's all."

The records of the plaintiff's family physician indicated that plaintiff was again reported as having bronchitis in December 1978 and January 1979, and that plaintiff had throat irritation, nasal drainage, and a cough. Similar symptoms were apparent during physical examinations by the family physician in December 1979, when plaintiff was diagnosed as having bronchitis. However, when plaintiff had another chest X ray taken in December 1979, the results were interpreted as normal.

Thereafter, plaintiff saw his family physician in January 1980. Plaintiff testified at his deposition that, during this examination by the family physician in January 1980, the doctor again advised plaintiff that he should change jobs. When asked during the deposition if plaintiff "understood that when he told you to change work, that meant that your lung problems were due to your work, is that right?" plaintiff responded, "Right, that's as I understood it."

In January 1982, plaintiff submitted to another employment examination, including a chest X ray. This examination showed demonstrable interstitial fibrosis in plaintiff's lungs. However, plaintiff's X ray and pulmonary functions tests were considered normal. Thereafter, a chest X ray taken in September 1983 revealed "exaggeration in both hilar areas."

Plaintiff was advised that he had asbestosis on December 12, 1984, when he underwent an evaluation at Cook County Hospital's department of occupational medicine. Plaintiff filed suit against defendants less than a year later, on May 8, 1985.

Following briefing and argument, the trial court entered summary judgment in favor of defendants. Plaintiff's timely appeal followed.

The sole question presented on appeal is whether the record establishes, as a matter of law, that plaintiff knew or should have known, from the comments made to plaintiff by his family physician in October 1978 and January 1980, that he had a lung condition caused by his work exposure to asbestos.

█ █ █ The Illinois Supreme Court has held the discovery rule applicable to the two-year statute of limitations regarding tort claims for asbestos-related injuries. (*Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 421 N.E.2d 864.) Under the discovery rule, the two-year statute of limitations begins to run when a plaintiff "knows or reasonably should know of an injury and also knows or reasonably should know that the injury was caused by the wrongful acts of another." (85 Ill. 2d at 169.) The rule does not mandate that a plaintiff know with precision the legal injury that has been suffered, but anticipates that plaintiff be possessed of sufficient information to cause plaintiff to inquire further in order to determine whether a legal wrong has occurred. (*Nolan*, 85 Ill. 2d at 171; see also *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 416, 430 N.E.2d 976.) Summary judgment is properly entered where the documents of record show as a matter of law that plaintiff had notice more than two years prior to filing suit, in accordance with the discovery rule, that his injury was caused by defendant's wrongful act.

*Nolan*, 85 Ill. 2d at 171-72; Ill. Rev. Stat. 1985, ch. 110, par. 2—1005.

Defendants contend that the conversation between plaintiff and his family physician, as recorded by plaintiff in his deposition testimony, demonstrates, as a matter of law, that plaintiff knew or reasonably should have known of his wrongfully caused injury in October 1978 or January 1980. Defendants emphasize that plaintiff's deposition testimony indicates that plaintiff was told by his family physician on these two occasions that plaintiff had "bad lungs" and that this condition "must be from" his working with asbestos. On this basis, defendants argue that they were entitled to summary judgment.

The decisions in *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 421 N.E.2d 864, and in *Healy v. Owens-Corning Fiberglas* (1989), 187 Ill. App. 3d 182, 543 N.E.2d 110, support the conclusion that the question presented in the case at bar cannot be resolved as a matter of law on defendants' motion for summary judgment. In *Nolan* and *Healy*, the plaintiffs filed suit against various manufacturers and distributors of asbestos-containing products for injuries relating to the plaintiffs' development of asbestosis. The plaintiffs were aware for more than two years prior to filing suit that they had pulmonary conditions. However, there was conflicting evidence with respect to when the plaintiffs knew or reasonably should have known that these lung disorders were caused by their work exposure to asbestos.

For example, the plaintiff in *Nolan* had been told by his physician, more than two years prior to the date on which plaintiff's suit was filed, that the doctor had a "strong suspicion" plaintiff's lung problems were related to his work with asbestos-containing products. In addition, certain evidence in *Nolan* indicated that plaintiff had explicitly acknowledged that he had "known for years" that his lung condition was caused by asbestos exposure. (*Nolan v. Johns-Manville Asbestos & Magnesia Materials Co.* (1979), 74 Ill. App. 3d 778, 782-84.) In *Healy*, the record indicated that, more than two years prior to filing suit, the plaintiff's chest X rays showed he had an abnormality in his lungs, two of his co-workers died of asbestos-related illnesses, and the plaintiff realized his lung abnormalities were possibly caused by his asbestos exposure.

However, other evidence in the records in *Nolan* and *Healy* indicated that the plaintiffs were in good health for several years thereafter, that their pulmonary conditions were described as illnesses other than asbestosis, and that plaintiffs were not diagnosed

as suffering from asbestosis until less than two years before their suits were filed. Consequently, the *Nolan* and *Healy* courts found that the evidence did not establish, as a matter of law, that the plaintiffs had notice, within the two-year statute of limitations prior to the plaintiffs' filing of their claims against the defendants, that the plaintiffs' pulmonary conditions had been caused by their work exposure to asbestos.

■ When considering the entire course of plaintiff's medical history in the case at bar, we cannot say, as a matter of law, that plaintiff knew or should have known, in October 1978 or January 1980, that work exposure to asbestos was causing his lung disorder. The record reflects that plaintiff was aware that he had a pulmonary condition for several years, and that he recalled being told that he had "fibrosis." During the 1970's and 1980's, plaintiff's medical symptoms were diagnosed as tuberculosis, chronic nonspecific fibrosis, bronchitis, and upper respiratory tract infections. In addition, many of plaintiff's chest X rays during this period were considered normal. Other than the comments from plaintiff's family physician, no mention was made to plaintiff that there was any correlation between his particular medical problems and his exposure to asbestos.

Although plaintiff acknowledged that his family physician advised him that his lung condition "must be from" his working with asbestos, plaintiff stated during deposition that he did not know "which way [the family physician] meant" these remarks. It is noteworthy that irrespective of the family physician's comments, the physician did not diagnose plaintiff's condition as "asbestosis," that he did not suggest to plaintiff that he undergo further tests or treatment for such a condition, and prescribed nothing to treat plaintiff's asbestosis. In light of plaintiff's medical history and the diagnoses that he suffered from tuberculosis, chronic nonspecific pulmonary fibrosis, bronchitis, or upper respiratory tract infections, reasonable minds could differ as to the significance plaintiff attached, or should have attached, to the family physician's comments in October 1978 or January 1980.

■ ■ In our view, the circumstances of the case at bar are similar to those in *Nolan* and *Healy*. The time at which the discovery rule is triggered is, "[i]n many, if not most, cases *** a disputed question to be resolved by the finder of fact." (*Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869, *appeal after remand* (1987), 118 Ill. 2d 321, 515 N.E.2d 68.) As in *Nolan* and *Healy*, it is for the finder of fact to determine what plaintiff knew

or should have known in October 1978 or January 1980 because of his family physician's remarks. Accordingly, the trial court erroneously entered summary judgment in favor of defendants in the case at bar.

In light of this disposition, we need not and do not address the plaintiff's argument that his medical records should not be considered in support of defendants' summary judgment motion. These medical records, even when considered, do not justify the entry of summary judgment in favor of defendants in the instant cause.

For the reasons stated, the judgment of the circuit court of Cook County is reversed, and the cause remanded for further proceedings.

Reversed and remanded.

JOHNSON and LINN, JJ., concur.