586 N.E.2d 521 (1991)
224 Ill. App.3d 292
166 Ill.Dec. 563
In re ASBESTOS CASES (Cornelius Mulligan, et al., Plaintiffs-Appellees
v.
Keene Corporation, et al., Defendants-Appellees; Allied Signal, Inc., Defendant-Appellant).
No. 1-91-1305.
Appellate Court of Illinois, First District, Fifth Division.
December 27, 1991.
Kathleen M. Gibbons, Tressler, Soderstrom, Maloney & Priess, Chicago, for defendant-appellant.
Cooney and Conway, Chicago, William R. Fahey, Kathy Byrne, of counsel, for plaintiff-appellees.
Robert H. Riley, Barbara E. Hermansen, Catherine Masters Epstein, Heidi Dalenberg, Schiff Hardin & Waite, Chicago, for defendant-appellee, Keene Corp.
Justice MURRAY delivered the opinion of the court:
Appellant, Allied Signal, Inc. (Signal) appeals from an order of the circuit court of Cook County which created an "Asbestos Deferred Registry" (Registry).
According to the 16-page order dated March 26, 1991, the registry is a court-supervised repository wherein certain asbestos-related personal injury claims filed in Cook County must be placed and kept on a deferred or inactive docket until such time, if ever, that the claimant develops a prescribed degree of impairment or disability arising from their contact with asbestos. Although the order affects several hundred plaintiffs and numerous defendants involved in more than 1,000 underlying actions already filed in Cook County, as well as all of the parties in the many actions expected to be filed, Signal is the only party appealing the circuit court's entry of the order establishing the registry.[1]
Initially, Signal contends that the order establishing the registry is, in effect, an injunctive order and, as such, is appealable *522 pursuant to Supreme Court Rule 307(a). (Ill.Rev.Stat.1989, ch. 110A, par. 307(a).) Additionally, Signal contends that the trial court abused its discretion in forming the registry because the registry circumvents the Illinois statute of limitations and statute of repose and because the registry violates Signal's rights under both the Federal and State constitutions by denying Signal its right to trial by jury, due process of law and equal protection under the law.
Before we address Signal's appeal we shall provide a brief procedural history of the matter before us and explain the evolution of the order being appealed from.
On December 30, 1987, a complaint was filed in the name of 134 plaintiffs against some 20 or more defendants, alleging injury as a result of exposure to asbestos. Subsequently, on May 24, 1988, plaintiffs' attorney filed a proposal asking the court to consider forming a "pleural registry," i.e., an inactive docket system for those plaintiffs diagnosed as having only slight evidence of asbestos-related disease. The petition indicated that there was precedent in other jurisdictions for the formation of such a registry. It also suggested that the formation of such a registry would provide a "practical solution" for the court in its attempt to control its own docket and administer the large number of asbestos-related cases already in the system, as well as those expected to enter the court system. Further, the proposal indicated that the registry would provide a method whereby plaintiffs, who showed only some small sign of asbestos-related injury but who were forced to file a claim in order to preserve their rights, could defer their cause of action to such time, if ever, that their condition progressed to disability.
A number of defendants objected to the formation of the registry and they expressed their position to the court in a response memo dated May 26, 1988. At the same time these defendants filed a motion to dismiss the filed complaint, contending that the 134 plaintiffs were improperly joined in the single complaint. As a result, on July 5, 1989, plaintiffs' complaint was stricken with leave to refile.
On January 22, 1990, a first amended complaint was filed on behalf of 127 plaintiffs and once again, on June 28, 1990, certain defendants moved to dismiss. Nevertheless, counsel for other defendants, instead of joining the motion to dismiss, joined with counsel representing various plaintiffs in filing a motion on August 13, 1990, asking the court to establish a "deferred asbestos docket." The motion was the product of a unified effort of some plaintiffs' and defense attorneys involved in asbestos litigation to create a procedure that would allow for the best utilization of the court's time and resources in the management of asbestos personal injury cases. The motion included certain mutually agreed-upon, objective medical criteria that could be used to determine when a plaintiff should enter or exit a deferred docket.
Several parties filed a response to the motion, some in support of the motion and some in opposition to it. In addition, other attorneys filed with the court, for its review, copies of orders entered by other jurisdictions which had already created deferred asbestos dockets.
At a hearing held on January 3, 1991, the court expressed its inclination to agree to the establishment of a deferred docket and asked that counsel representing both plaintiffs and defendants meet and review the documents which established deferred dockets in New York and Baltimore so that an agreed order might be presented to the court which would establish the criteria for a deferred docket registry.
On March 26, 1991, an order "agreeable in substance" to nearly all the parties, was tendered to the court. After some discussion and fine-tuning of certain details of the order and over the objections of a few parties opposing it, the court agreed to sign the 16-page order, which established a deferred docket registry for asbestos-related litigation.
Although our recitation of the procedural facts explains how the court order came about, it does not explain why it came about. To understand why, it is necessary to consider other factors.
*523 According to statistics provided by plaintiffs-appellees' brief, taken from a report filed with the U.S. Bankruptcy Court[2], there are more than 100,000 asbestos related personal injury claims presently pending in courts across the United States today and more than 366,000 claims are projected to be filed in the future. The degree of disability or disease in these claimants ranges from extremely mild (claimants who show some evidence of "pleural plaques" i.e., patches of thickening of the lining of the lungs) to severe (claimants who are inflicted with asbestosis, mesothelioma or cancer). Apparently, the largest percentage of claimants exhibit only minor asbestos-related injury[3] and often have no measurable impairment or disability at the time they file their cause of action. These claimants have chosen to file actions, however, because they are aware of the latent and progressive nature of asbestos-related disease and because they fear that their claims might be barred by the statute of limitations if they wait until such time, if ever, that their asbestos-related condition progresses to disability. They justifiably believe that their knowledge that they possess nondysfunctional asbestos-related changes in their lungs places them on notice sufficient to start the statute of limitations time clock running. Consequently, there has been a massive influx of asbestos-related personal injury claims into the court system.
Due to the sheer volume, as well as the complexity of these asbestos cases, the court system is becoming clogged. Furthermore, considering the number of actions expected to be filed in the future, the unfortunate reality is that many of the most severely affected claimants might be unable to gain access to the courts in a timely fashion if the courts are required to consider each case as it is filed and without regard to the severity of the injury. For this reason courts have perceived the need to create new procedures whereby they might manage and control this great volume of cases in a more orderly fashion, allowing the more severely impaired claimants to have their claims determined more expeditiously, while allowing the more mildly affected claimants to preserve their rights but defer their claims to a point in time when, if ever, their injury becomes more pronounced.
To accomplish this goal several courts in other jurisdictions have created deferred docket registries, similar to the one being challenged here.[4] We are now asked to rule upon whether the circuit court of Cook County has the authority to enter an order establishing a deferred docket registry and whether it was proper for the court to have done so.
The first issue to be addressed, however, is whether this reviewing court has jurisdiction to consider the appeal. If this court's jurisdiction has been invoked at all depends on whether the order is deemed an injunction. If it is not, the order is nonappealable since it does not dispose of the some 1,000 or so underlying cases, nor does it contain the necessary language that no just reason exists to delay the appeal or enforcement of the order. Ill.Rev.Stat. 1989, ch. 110A, par. 304(a).
Signal contends that the order is "injunctive in nature" and, as such, appealable pursuant to Supreme Court Rule 307(a). The appellees who have filed briefs with this court (which includes both plaintiffs and defendants involved in asbestos litigation) disagree. They argue that the order is not an injunction and that the questions raised by Signal are not ripe for appeal.
*524 Certainly the order does not purport to be an injunction. Instead, it appears to be an attempt by an able judge and a goodly portion of the bar to bring some order to a chaotic situation. Nevertheless, we must delve deeper to determine whether the order constitutes an injunctive order since, as stated in In re A Minor (1989), 127 Ill.2d 247, 260, 130 Ill.Dec. 225, 537 N.E.2d 292, it is the substance, not the form that is controlling and actions having the force and effect of injunctions are appealable under 307(a)(1).
However, we find another passage from the In re A Minor opinion very instructive. It states:
"Not every nonfinal order of a court is appealable, even if it compels a party to do or not to do a particular thing. Orders of the circuit which can be properly characterized as `ministerial,' or `administrative'because they regulate only the procedural details of litigation before the courtcannot be the subject of an interlocutory appeal. (See People ex rel. Scott v. Silverstein (1981), 87 Ill.2d 167, 171 [57 Ill.Dec. 585, 429 N.E.2d 483] (stating that discovery orders and subpoenas are not appealable interlocutory orders).) Such orders may be considered noninjunctive because they did not form part of the power traditionally reserved to the courts of equity, but instead, were part of the inherent power possessed by any court to compel witnesses to appear before it and give testimony. (See JFS v. ABMJ (1983), 120 Ill.App.3d 261, 262 [75 Ill.Dec. 908, 458 N.E.2d 76].) They do not affect the relationship of the parties in their everyday activity apart from the litigation, and are therefore distinguishable from traditional forms of injunctive relief." 127 Ill.2d at 261-62, 130 Ill.Dec. 225, 537 N.E.2d 292. (Emphasis added.)
Based upon the above-cited reference, we must conclude that the order establishing the deferred docket registry is a nonappealable, noninjunctive order since it does not affect the relationship of the parties outside the parameters of the litigation. We believe that the order is best characterized as a ministerial or administrative one because it regulates the procedural details of litigation made complex because of numbers. Given the number of cases presently in the system, delay in litigating the claims is inevitable. Thus, the registry is a tool whereby the court may prioritize the litigation of cases already filed and an example of the court exercising its inherent authority to control its docket. For these reasons we believe that this court has no jurisdiction to consider the merits of Signal's appeal.
Even if we were to have found that this court had jurisdiction, we would question whether Signal's challenge of the order could defeat it entirely or whether the order could only be found ineffective as it applied to Signal. This is because the order was essentially agreed to by the other parties, and even those parties who opposed it did not appeal and so apparently acquiesced to it.
Finally, our finding here does not, we believe, leave Signal without an opportunity for relief. Signal could still move to sever its cases from the registry under the provisions of section 2-1006 of the Code of Civil Procedure. (Ill.Rev.Stat.1989, ch. 110, par. 2-1006.) If the trial court refuses to sever Signal's cases, Signal may request the circuit court to insert in its order denying severance, the language set forth in Supreme Court Rule 304(a) (Ill.Rev.Stat. 1989 ch. 110A, par. 304(a)), and then appeal that ruling. Alternatively, Signal could seek to appeal the court's order under Supreme Court Rule 308. Ill.Rev.Stat.1989, ch. 110A, par. 308.
We do not, in any way, mean to suggest that Signal should take such alternative action, as discussed above. Nor do we mean to infer, by any of our comments in this opinion, the degree of success that any such appeal would have. We merely indicate that, at this time, the court is without jurisdiction to consider the present appeal. Consequently, the appeal is dismissed.
DISMISSED.
LORENZ, P.J., and GORDON, J., concur.
NOTES
[1] According to defendants-appellees' brief, Allied Signal, along with Illinois Fiber Specialty and A & M Insulation, objected to the entry of the order establishing the registry, but only Signal appealed. Additionally, it appears that Signal is the named defendant in only two (2) of the more than 1,000 asbestos-related cases pending in Cook County.
[2] See Re: Johns-Manville Corporation, et al., Nos. 82 B 11656 (BRL) through 82 B 11676 (BRL) pp. 50-51, 97-99, (U.S.B.C. Southern District of New York) filed May 16, 1991.
[3] According to defendant-appellee's brief, 462 of the 1,000 or more cases presently in the Cook County Circuit Court system have been placed on the registry. This means that nearly half of the plaintiffs having asbestos-related cases pending in Cook County currently exhibit no disability and suffer no measurable impairment.
[4] Registries have already been established in the circuit courts of Baltimore, Maryland and Milwaukee, Wisconsin; the superior courts of Atlanta, Georgia and Los Angeles, California; the supreme court of New York; and the U.S. District Courts of Hawaii, Connecticut, Northern Oklahoma, and Western New York.