FIFTH DIVISION

July 15, 2005

No. 1-03-3054

ELLEN M. HEALY, Individually and as Special Administrator of the Estate of Francis J. Healy, 

Plaintiff-Appellant,

v.

OWENS-ILLINOIS, INC., a Foreign Corporation, COMMONWEALTH EDISON COMPANY, an Illinois Corporation, UNION CARBIDE CORPORATION, a Foreign Corporation, and UNION CARBIDE POLYOLEFINS DEVELOPMENT COMPANY, INC., a Foreign Corporation,

Defendants-Appellees.

)))))))))))))))

)

Appeal from the

Circuit Court of

Cook County

Honorable

William D. Maddux,

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

This appeal arises from the circuit court’s entry of summary judgment in favor of defendant corporations Owens-Illinois, Inc., Commonwealth Edison Company, Union Carbide Corporation and Union Carbide Polyolefins Development Company, Inc. (hereinafter referred to as defendants), on plaintiff’s complaint alleging that Francis Healy’s personal injuries arose from asbestosis caused by exposure to asbestos fibers.  The circuit court held that plaintiff’s lawsuit was barred by the two-year statute of limitations for personal injury claims (735 ILCS 5/13-202 (West 2000)) because, as a matter of law, Healy was on notice of his injury in January 1999, more than two years before he filed his claim.  Because we find that the record does not reveal a genuine issue of material fact as to whether Healy knew or reasonably should have known of his asbestos-related injury more than two years before his complaint was filed, we affirm the circuit court’s grant of summary judgment to defendants.

The following undisputed facts are taken from the pleadings, interrogatories and deposition testimony in the record.  Healy was born in 1935.  Healy’s father and his brother, John, were asbestos workers.  Healy stated that when he was a child, it was customary for people to bathe only once a week and for family members to share the same bed.  Healy said his family followed those routines, sharing a bed with his father or brother.  Healy said his father regularly came home from his asbestos job with dust-covered clothing.  Healy’s father died in 1962, and Healy lived in the family home until 1971. 

Healy was employed as an asbestos worker alongside his father in 1952 and 1953.  From 1957 to 1998, Healy worked as a Chicago police officer, and from 1960 to 1965, he also worked part-time at his uncle’s asbestos company. 

John Healy contracted asbestosis, which prompted a lawsuit and an appeal similar to this proceeding (which will be addressed later in our analysis).
(footnote: 1)  Healy’s cousin, Marguerite Ryan Kiley, who lived with the Healy family from 1941 to 1955, was diagnosed with an asbestos-related medical condition in 1996.  

In December 1998, Healy’s physician, Dr. Michael Ramsey, ordered chest X rays as part of a general physical.  Those X rays displayed cloudiness in Healy’s lungs, and the written X-ray report noted that Healy’s results suggested “the presence of pulmonary fibrosis” and that the condition of his lungs was “seen in patients with asbestosis.”  The radiology report concluded with the inquiry, “Does this patient have an asbestos exposure history?”  No evidence was offered that Healy was shown a copy of the December 1998 reports.

Dr. Ramsey referred Healy to Dr. J. Peter Szidon, a pulmonologist, who examined Healy on January 5, 1999.  Healy said he told Dr. Szidon of his father and brother’s work history and his own exposure to asbestos and told the doctor that his brother was being treated for asbestosis.  Healy said he and Dr. Szidon had “very general discussions” about asbestos exposure.  Healy said that at that time, he believed that asbestos could cause lung disease.  According to a letter written by Dr. Szidon on January 11, 1999, Healy told him that his father died of asbestosis and emphysema. 

A letter from Dr. Szidon addressed to Dr. Ramsey and another physician regarding the January 5, 1999, examination noted Healy’s symptoms and the history of asbestos exposure of Healy and his family.  Dr. Szidon concluded with the following paragraph:

“It seems that this gentleman has asbestosis.  Confirmation will be sought by obtaining a CT-scan of his chest.  We will review him again in the clinic next week, after the results CT-scans [
sic
] are available and provide you with follow up.”

Dr. Szidon said that letter was not relayed to Healy.  

On January 11, 1999, Dr. Szidon saw Healy again and that meeting was chronicled in a second letter to Dr. Ramsey.  Healy received a copy of that letter, which states in relevant part: 

“We met with Mr. Healy on January 11, 1999, to discuss the results of his CT-scan.  The CT-scan shows extensive pulmonary fibrosis, predominately [
sic
] in both lung bases. * * * 
It appears that the diagnosis of asbestosis has been supported, on clinical and radiographic criteria.  
Since there is an apparent relative paucity of exposure by history, I am less than fully convinced.  An alternative diagnosis, idiopath[ic]
 pulmonary fibrosis[,] is possible.
(footnote: 2)  

We discussed with [Healy] the following items: ‘asbestosis,’ as a diagnostic label in view of the mildness of lung involvement, as evidenced by a TLC [Total Lung Capacity] of 73% of predicted. 
* * * The discussion centered primarily on describing the high[] risk of lung cancer.  The patient had a [
sic
] exposure to asbestos, coupled with a significant smoking history.” (Emphasis added.)  

Dr. Szidon said that during one of the January 1999 meetings, he told Healy there was no question he had been exposed to asbestos because the pleural plaque in his lungs was the “near signature” of such exposure. 

Regarding his remark in the January 11, 1999, letter that the “diagnosis of asbestosis has been supported,” Dr. Szidon stated in 2002:

 “This should be interpreted to mean that I did not make the diagnosis of asbestosis.  An alternative diagnosis [of] idiopathic fibrosis is possible, I should have said is also possible.  So at that point I was ambivalent and uncertain and I recall very clearly that I transmitted that uncertainty to Mr. Healy.  I did not make a diagnosis.”

As to his discussion with Healy chronicled in the letter, Dr. Szidon later stated:

“I wasn’t certain that asbestosis was present because I was dealing with a positive exposure and with a normal lung function and I didn’t want to put a label that was unwarranted.  * * *  My recollection is that we discussed the certainty of his asbestos exposure.  There was absolutely no question that he had, had been exposed.  The evidence was there, there were plaques and there was his history.”  

Healy stated that Dr. Szidon told him in January 1999 that his family history and exposure to asbestos was not sufficient to cause lung damage.  At that point, Healy thought his doctors did not believe he had asbestosis.  

In late 2000 and early 2001, Healy began experiencing shortness of breath and consulted another doctor, who admitted him to the cardiology unit of Rush-Presbyterian Hospital.  In May 2001, Healy was examined by Dr. David Cugell, who is recognized in the field of asbestos-related diseases, and Dr. Cugell determined that Healy had advanced end-stage asbestosis.  Dr. Cugell testified that Healy’s direct asbestos exposure and his exposure from his family household were substantial contributing factors to Healy’s condition.  In a June 2001 affidavit, Healy stated: “Thinking of it now, I am sure I had a lot of exposure to asbestos just living in the same house with my dad for almost 30 years and sharing the same bed with him for any number of years when I was a very small boy.”  

Healy filed suit on June 29, 2001, and later amended his complaint to include the current defendants, who moved for summary judgment.  Defendants alleged, 
inter alia
, that Healy’s claims were barred by the two-year statute of limitations.  Healy died on May 17, 2002.  Plaintiff is Healy’s widow and the administrator of his estate.  

Dr. Szidon stated that as late as September 2001, he was unsure whether Healy’s condition was asbestosis or idiopathic pulmonary fibrosis.  In 2002, Dr. Cugell stated that it was reasonable for Healy to believe in January 1999 that he did not have an asbestos-related injury or condition, and Dr. Szidon agreed with Dr. Cugell’s statement.   

ANALYSIS

Contending that the trial court’s grant of summary judgment should be reversed, plaintiff argues that Healy was in excellent physical condition in 1999 and, at that point, no physician had diagnosed Healy with asbestosis or told Healy of such a diagnosis. 

Summary judgment shall be granted “if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”  735 ILCS 5/2-1005(c) (West 2000).  However, although summary judgment can aid in the expeditious disposition of a lawsuit, it is a drastic measure and should be allowed only when a ruling in favor of the movant is clear and free of doubt.  
Dardeen v. Kuehling
, 213 Ill. 2d 329, 335, 821 N.E.2d 227, 231 (2004).  “The purpose of summary judgment is not to try a question of fact, but rather to determine whether a genuine issue of material fact exists.”  
Adams v. Northern Illinois Gas Co.
, 211 Ill. 2d 32, 42-43, 809 N.E.2d 1248, 1256 (2004).  “A triable issue precluding summary judgment exists where the material facts are disputed or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts.”  
Adams
, 211 Ill. 2d at 43, 809 N.E.2d at 1256.  Our review of the circuit court’s ruling on a summary judgment motion is 
de novo
.  
Friends of the Parks v. Chicago Park District
, 203 Ill. 2d 312, 319-20, 786 N.E.2d 161, 165 (2003). 

Generally, a lawsuit for personal injury must be filed within two years after the cause of action accrues, which is typically when the person suffers injury.  
Wilson v. Devonshire Realty of Danville
, 307 Ill. App. 3d 801, 805, 718 N.E.2d 700, 704 (1999).  “Requiring the prosecution of a right of action within a reasonable time so as to prevent the loss or impairment of available evidence and to discourage delay in the bringing of claims is the primary purpose of a limitations period.”  
Golla v. General Motors Corp
., 261 Ill. App. 3d 143, 148, 633 N.E.2d 193, 197 (1994), 
aff’d
, 167 Ill. 2d 353, 657 N.E.2d 894 (1995).  Where an injury is not caused by a single traumatic event but rather occurs more gradually, courts apply the discovery rule, which provides that a cause of action accrues when a person knows or should know, through reasonable investigation, of the injury and its wrongful causation.
  
Nolan
 
v. Johns-Manville Asbestos
, 85 Ill. 2d 161, 171, 421 N.E.2d 864, 868-69 (1981);
 Knox
 
College v. Celotex Corp.
, 88 Ill. 2d 407, 414-15, 430 N.E.2d 976, 979-80 (1981).  “The rule does not mandate that a plaintiff know with precision the legal injury that has been suffered, but anticipates that plaintiff be possessed of sufficient information to cause plaintiff to inquire further in order to determine whether a legal wrong has occurred.”  
Martin v. A&M Insulation Co.
, 207 Ill. App. 3d 706, 710, 566 N.E.2d 375, 378 (1990), citing 
Nolan
, 85 Ill. 2d at 171, 421 N.E.2d at 868.  

Because Healy’s lawsuit was filed in June 2001, the central issue in this appeal is whether Healy knew or reasonably should have known prior to June 1999 that he was injured and that his injuries were wrongfully caused.  Plaintiff asserts that Healy neither knew nor had reason to know that he had asbestosis until May 2001.  Plaintiff argues that it was reasonable for Healy to believe in 1999 that he did not have asbestosis, pointing to the statements of Dr. Szidon and Dr. Cugell in 2001 and 2002.  Plaintiff contends that the physicians’ testimony, coupled with Healy’s denial that he was told in 1999 that he had asbestosis, creates a question of fact that precludes summary judgment.  

Plaintiff cites several asbestos-related cases in which the reviewing courts reversed grants of summary judgment.  In 
Nolan
, the Illinois Supreme Court noted that conflicting evidence was presented as to whether the plaintiff had sufficient information to know of his asbestos-related illness, and that the seriously disputed question of fact precluded summary judgment.
  
Nolan
, 85 Ill. 2d at 171-72, 421 N.E.2d at 869.  The plaintiff asbestos worker in 
Nolan
 first sought treatment for breathing difficulties in 1957 and was told at that time that he had “lung problems.”  The plaintiff was diagnosed with asbestosis and tuberculosis in 1973, and his claim was filed less than two years later.  
Nolan
, 85 Ill. 2d at 166, 421 N.E.2d at 866. 

The 
Nolan
 court stated that although “an injured person is not held to a standard of knowing the inherently unknowable,” a party may not “slumber on [its] rights” once a wrongfully caused injury becomes evident.  
Nolan
, 85 Ill. 2d at 171, 421 N.E.2d at 868.  Acknowledging that the evidence was conflicting as to whether the plaintiff had sufficient information to have known before 1973 that his injury was asbestos-related, the supreme court 
found summary judgment inappropriate, stating 
“[t]he question of when a party knew or reasonably should have known both of an injury and its wrongful cause is one of fact, unless the facts are undisputed and only one conclusion may be drawn from them.”  
Nolan
, 85 Ill. 2d at 171, 421 N.E.2d at 868-69. 

As noted earlier, Healy’s brother, John, was the plaintiff in another asbestos case, in which the appellate court found that genuine issues of material fact existed as to whether he knew or should have known before October 1981 of the existence and cause of his injury.  
Healy
, 187 Ill. App. 3d at 186, 543 N.E.2d at 113.  John Healy began working in the asbestos industry full-time in 1949.  Between 1978 and 1980, Healy learned of an abnormality in his lungs, and he testified that he considered the possibility that his injury could be asbestos-related.  
Healy
, 187 Ill. App. 3d at 187, 543 N.E.2d at 113-14.  The court noted that these facts, along with John Healy’s knowledge that two of his coworkers died of asbestos-related diseases, were evidence that Healy was aware that his lung condition could be connected with asbestos exposure.  
Healy
, 187 Ill. App. 3d at 187, 543 N.E.2d at 114.  However, the court contrasted that knowledge with Healy’s statements that he was not specifically advised until April 1983 that he had asbestosis and that as late as 1983, his doctors were unsure of the cause of his lung condition.  
Healy
, 187 Ill. App. 3d at 187, 543 N.E.2d at 114.  Citing 
Nolan
, the
 Healy
 court concluded that summary judgment was inappropriate because “triable issues of fact existed regarding plaintiffs’ knowledge of John Healy’s injuries and awareness of the connection to asbestos exposure.”  
Healy
, 187 Ill. App. 3d at 187, 543 N.E.2d at 114.  The court stated that as in 
Nolan
, summary judgment was improper because some evidence supported each conclusion, 
i.e.
, that Healy was aware or was not aware of his lung condition in 1981.  
Healy
, 187 Ill. App. 3d at 189, 543 N.E.2d at 115.  

In
 Martin
, a third asbestos case, 
the appellate court reversed summary judgment for the defendant company despite the plaintiff insulation worker’s admission that his doctor told him he had “bad lungs” and that his condition “must be from” working with asbestos.  
Martin
, 207 Ill. App. 3d at 712-13, 566 N.E.2d at 379.  At various times, the plaintiff was diagnosed with tuberculosis, chronic nonspecific pulmonary fibrosis and bronchitis.  
Martin
, 207 Ill. App. 3d at 712, 566 N.E.2d at 379.  Finding the facts similar to those in 
Nolan
 and 
Healy
, the 
Martin
 court stated that even in light of the doctor’s statements, reasonable minds could differ as to their significance, given that the doctor did not diagnose the plaintiff with asbestosis, suggest further treatments or prescribe medication.  
Martin
, 207 Ill. App. 3d at 712, 566 N.E.2d at 379.  The court held that as in 
Nolan
 and 
Healy
, it was the role of the finder of fact to determine what the plaintiff knew or should have known during the relevant time period.  
Martin
, 207 Ill. App. 3d at 712-13, 566 N.E.2d at 379.    

Citing those cases, plaintiff asserts that Healy neither knew nor had reason to know that he had asbestosis until Dr. Cugell examined Healy in May 2001.  Plaintiff claims that Healy was not diagnosed with asbestosis in 1999, pointing to the content of Dr. Szidon’s 1999 letters and the doctor’s later testimony that he did not make a definitive diagnosis at that time.  Plaintiff also argues that although Healy was exposed to asbestos in the 1950s and 1960s, Healy had no reason to connect those incidents with his condition in the 1990s and beyond. 

 Defendants respond that the circuit court correctly ruled that Healy knew or should have known in January 1999 that he had suffered an asbestos-related injury, pointing to Healy’s receipt of Dr. Szidon’s January 1999 letter diagnosing Healy with asbestosis and also citing Dr. Szidon’s discussion with Healy at that time that the pleural plaques in his lungs were a sign of asbestos exposure.  Defendants further assert that Healy knew he had been exposed to asbestos directly through his work and indirectly by living with his father and brother, who both died of asbestos-related ailments.  Defendants contend that Healy was aware of his relatives’ health problems and, based on that knowledge and his doctors’ remarks, Healy knew or should have known in January 1999 that his fibrosis of the lungs and reduced lung capacity probably were caused by asbestos.  

Defendants distinguish the authority relied upon by plaintiff, asserting that in 
Nolan
 and 
Healy
, no evidence was presented that the plaintiffs were told during the pertinent time periods that their lung problems were asbestos-related.  Defendants also point out that in 
Martin
, the plaintiff was diagnosed with numerous conditions, thus creating a question of fact as to the source of the plaintiff’s injury.  Defendants argue that here, in contrast, Healy was told in January 1999 that he had asbestosis.  

In support of their argument that Healy’s knowledge in January 1999 was sufficient to commence the running of the statute of limitations, d
efendants cite
 Betts v. Manville Personal Injury Settlement Trust
, 225 Ill. App. 3d 882, 588 N.E.2d 1193 (1992).
(footnote: 3)  In that case, the court considered whether the plaintiff knew of his lung disease before May 1978, and evidence was presented that 
between 1974 and 1976, X rays of the plaintiff’s lungs revealed scarring, and the plaintiff’s family doctor told him that the scarring was possibly connected with asbestosis.  
Betts
, 225 Ill. App. 3d at 896, 588 N.E.2d at 1203.  In January 1978, the doctor diagnosed asbestosis and informed the plaintiff that a lung biopsy was necessary to reach a definite diagnosis; however, the plaintiff declined to consult with a pulmonologist recommended by his doctor.  
Betts
, 225 Ill. App. 3d at 897, 588 N.E.2d at 1203.  The plaintiff eventually had a lung biopsy in April 1979 that indicated he had asbestosis.  
Betts
, 225 Ill. App. 3d at 897, 588 N.E.2d at 1203.  Based on the statute of limitations, the trial court granted summary judgment, and the appellate court affirmed.  
Betts
, 225 Ill. App. 3d at 897, 588 
N.E.2d 
at 1203.  Citing 
Nolan
, the 
Betts
 court stated 
that although the doctor’s diagnosis in January 1978 “was not absolutely certain,” the plaintiff at that point “was alerted to the fact of injury and to the possibility of its wrongful causation.”  
Betts
, 225 Ill. App. 3d at 897, 588 N.E.2d at 1203.  

Defendants assert that under 
Betts
, 
the law does not require an unequivocal medical diagnosis of asbestosis for this court to determine that Healy knew or reasonably should have known in January 1999 that his injury was asbestos-related.  Defendants also rely on 
Witherell v. Weimer
, 85 Ill. 2d 146, 421 N.E.2d 869 (1981),
 and on 
Knox College
.  
We agree that 
Nolan
 and later precedent firmly establish that an affirmative diagnosis of an injury is not the bellwether that gives rise to a plaintiff’s claim.  The statute of limitations commences when the plaintiff possesses sufficient knowledge of his injury and its cause such that would place a reasonable person on notice to ascertain its source and whether legally actionable conduct was involved.  
Knox College
, 88 Ill. 2d at 416-17, 430 N.E.2d at 980-81; 
Nolan
, 85 Ill. 2d at 171, 421 N.E.2d at 868. 

Although numerous courts have noted that determination raises a question of fact, summary judgment is appropriate when the facts are undisputed and only one conclusion may be drawn from them.  
Nolan
, 85 Ill. 2d at 171, 421 N.E.2d at 868-69;
 Hertel v. Sullivan
, 261 Ill. App. 3d 156, 160, 633 N.E.2d 36, 39 (1994); 
Betts
, 225 Ill. App. 3d at 896, 588 N.E.2d at 1202.
  Here, while plaintiff raises numerous arguments as to the interpretation and weight to be given certain facts, and although plaintiff contends that defendants failed to include or discuss specific points in their brief, we do not find that the parties dispute any of the underlying facts of this case.  

The pertinent question is whether Healy knew or reasonably should have known before June 1999 that he was injured and that his injuries were wrongfully caused.  See
 Clay v. Kuhl
, 189 Ill. 2d 603, 608, 727 N.E.2d 217, 220 (2000); 
Nolan
, 85 Ill. 2d at 171, 421 N.E.2d at 868.  While this court is mindful of the careful scrutiny afforded to cases of asbestosis, an affliction that develops “slowly and insidiously” in contrast to other more direct and violent personal injuries,
(footnote: 4) we have applied such close examination to this case.  We conclude that the undisputed facts reveal that Healy knew or reasonably should have known of his asbestos-related injury and its wrongful cause in January 1999, which was more than two years prior to the filing of his claim.  

Although plaintiff contests that Healy was told in 1999 that he had asbestosis, Healy received a copy of Dr. Szidon’s January 1999 letter in which the doctor stated that “the diagnosis of asbestosis has been supported.”  As the letter states, Dr. Szidon discussed with Healy the possible causes of his extensive pulmonary fibrosis.  Healy’s personal and family history also support our conclusion.  Healy knew that he had been directly exposed to asbestos through his work and indirectly exposed to asbestos in his household through physical proximity to his father and brother.  Healy told Dr. Szidon in January 1999 that his brother had been diagnosed with asbestosis and that his father had died from asbestosis and emphysema.  Because Healy knew or reasonably should have known of his asbestos-related injury and its wrongful cause before June 1999, the two-year statute of limitations bars plaintiff’s claim. 

Plaintiff argues that this holding essentially requires Healy to have self-diagnosed his condition in 1999 because no doctor had diagnosed him at that point and no other facts put Healy on notice of his condition.  Plaintiff contends that because Dr. Szidon stated in 2001 that he remained uncertain about the cause of Healy’s lung condition, it was reasonable for Healy not to have known the cause in 1999. 

Defendants rely on 
Betts
 for their assertion that an unequivocal diagnosis was not needed for Healy to have known that he had an injury that was wrongfully caused.  Plaintiff concedes that 
Betts
 held that a
 medical diagnosis need not be certain for the knowledge of that diagnosis to be imputed to a plaintiff-patient.  However, plaintiff contends that 
Betts 
is distinguishable because the doctor in 
Betts
 testified that he informed the plaintiff that he had asbestosis, while here, plaintiff asserts that Healy’s doctors were unsure of the cause of his condition in 1999 and did not diagnose his disease until 2001.  
We find the facts before us analogous to those in 
Betts
.  In both cases, physicians informed the plaintiffs of initially tentative medical diagnoses that were later strengthened and confirmed but that, at the time of their delivery, provided the plaintiffs with sufficient knowledge or reason to know that their injuries existed and were caused by asbestos.  See 
Betts
, 225 Ill. App. 3d at 896-97, 588 N.E.2d at 1203. 

Plaintiff further fails to acknowledge the effect of Healy’s family medical history on Healy’s knowledge or reason to know of his health condition.  Plaintiff asserts that when Dr. Szidon was told of Healy’s family history, the doctor did not emphasize to Healy the extent of his asbestos exposure so that he would be on notice that it contributed to his condition.  However, given the asbestos-related health conditions of Healy’s father and brother, of which Healy admittedly was aware, Healy had notice or reason to know of his own exposure and its effects.  

Plaintiff also contends that defendants’ position is that Healy had an absolute duty to obtain a second opinion as to his medical condition, and plaintiff asserts that Healy consulted with three doctors before seeing Dr. Szidon.  However, the critical period began 
after
 Dr. Szidon’s diagnosis in January 1999.  As we have discussed, it was after that point that Healy possessed sufficient knowledge of his injury and its cause such that would place a reasonable person on notice to ascertain its source.  See 
Knox College
, 88 Ill. 2d at 416-17, 430 N.E.2d at 980-81; 
Nolan
, 85 Ill. 2d at 171, 421 N.E.2d at 868.  Our holding is not that Healy was required to seek a second medical opinion after consulting with Dr. Szidon; we hold that after his January 1999 consultations with Dr. Szidon, Healy was on notice of his injury and had two years from that point to file his lawsuit.  

Plaintiff also asserts that while defendants rely on 
Martin
, that case instead supports her position because in 
Martin
, the appellate court found summary judgment inappropriate even though the plaintiff admitted that he was aware, via his doctor’s comments, that his lung problems were caused by asbestos exposure.  
Martin
, 207 Ill. App. 3d at 712, 566 N.E.2d at 379.  Plaintiff contends that because Healy made no such admission, her position is stronger than that of the patient in 
Martin
.  However, we persist in finding 
Martin
 distinguishable from the instant case because there
, the doctor did not diagnose the plaintiff with asbestosis and no other correlations were made between that condition and the plaintiff’s medical condition, thus prompting the court to conclude that “reasonable minds could differ as to the significance” that the plaintiff attached to the physician’s remarks.  
Martin
, 207 Ill. App. 3d at 712, 566 N.E.2d at 379.  Here, Healy was diagnosed with asbestosis and was aware of his direct and indirect exposure to asbestos. 

As a final assertion on appeal, plaintiff contends that requiring Healy and other litigants to self-diagnose their medical conditions is a violation of article I, section 12, of the Illinois Constitution, which provides that “[e]very person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation.”  Ill. Const. 1970, art. I, §12.  Defendants respond that statutes of limitations repeatedly have weathered similar constitutional challenges, and they note that Illinois courts have interpreted the provision as “merely an expression of philosophy and does not mandate that a certain remedy be provided in any form for any alleged wrong.”
  Teachers Insurance & Annuity Ass’n of America v. LaSalle National Bank
, 295 Ill. App. 3d 61, 72-73, 691 N.E.2d 881, 890 (1998).  

Plaintiff concedes that section 12 of article I traditionally has been construed as a goal as opposed to a requirement of a specific remedy.  We therefore see no need to further discuss plaintiff’s contention on this point, other than to note plaintiff’s assertion that because of the slow-developing nature of asbestosis and the often lengthy period between exposure to asbestos and the manifestation of symptoms, the limitations periods could bar victims’ claims before they are aware of a potential cause of action.  As defendants point out, a Cook County Asbestos Deferred Registry was created in 1991 to enable people with legal claims stemming from asbestos-related conditions (but who had not yet experienced actual physical impairments) to record their claims and provide public notice to potential future defendants.  Such cases are placed on the court’s deferred or inactive docket “until such time, if ever, that the claimant develops a prescribed degree of impairment or disability arising from their contact with asbestos.”  The registry sets out objective medical criteria to be used in determining when a plaintiff can be placed on or taken off of the registry.  Filing a claim with the court-supervised registry, even in the absence of physical evidence of asbestosis, commences the running of the statute of limitations.  See 
In re Asbestos Cases
, 224 Ill. App. 3d 292, 586 N.E.2d 521 (1991); see also paragraph 7 of Third Amended Order Governing Asbestos Deferred Registry (February 17, 1998). 

In closing, we summarize our holding that Healy, after his January 1999 consultations with Dr. Szidon, was on notice of his injury and had two years from that point to file his lawsuit.  Because Healy did not file his claim until June 2001, the two-year statute of limitations bars his action against defendants.  Accordingly, the circuit court’s grant of summary judgment to defendants is affirmed.

Affirmed. 

O'BRIEN and NEVILLE, JJ., concur.

FOOTNOTES
1: 
Healy v. Owens-Corning Fiberglas
, 187 Ill. App. 3d 182, 543 N.E.2d 110 (1989).

2:  “Idiopathic” means from an unknown cause.  Stedman’s Medical Dictionary 690 (24th
 ed. 1982).  

3: 
Betts
 involved a number of consolidated cases brought by employees seeking damages for exposure to asbestos and other materials, and in its ruling, the appellate court 
discussed several issues as they pertained to individual plaintiffs.  
Betts
, 225 Ill. App. 3d at 895, 588 N.E.2d at 1202.  

4: 
Schultz v. Keene Corp.
, 729 F. Supp. 609, 612 (1990) (
noting that asbestosis “progresses subtly over a long period of time, taking anywhere from 10 to 25 years after initial exposure before the disease manifests itself”).