2022 IL App (2d) 210750-U
No. 2-21-0750
Order entered October 17, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JOHN DOE, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 21-L-386 |
| | ) | |
| LAKE FOREST HIGH SCHOOL DISTRICT | ) | |
| 115, and LAKE FOREST HIGH SCHOOL, | ) | Honorable |
| | ) | Joseph V. Salvi |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment.
Justices Schostok and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Trial court properly dismissed plaintiff's complaint as barred by the statute of limitations where plaintiff alleged that he knew of the injury and that it was wrongfully caused at the time the injury occurred, and he had sufficient information to inquire further regarding the existence of a cause of action within the limitations period. Trial court is affirmed.

¶ 2    In 2021 plaintiff, John Doe, filed a five-count complaint alleging that between 1987 and 1990, David Miller, a high school theater teacher for defendants, Lake Forest School District 115 and Lake Forest High School Community High School District 99, sexually abused him. The trial court dismissed plaintiff's complaint with prejudice as barred by the applicable statute of limitations. Plaintiff appeals from that order. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On May 25, 2021, plaintiff filed a six-count complaint against defendants. The following facts are taken from plaintiff's complaint. From 1986 to 1990 plaintiff attended Lake Forest High School and participated in the theater program. David Miller, the theater director, sexually abused plaintiff throughout high school.

¶ 5    The initial incident occurred in 1987 when plaintiff was 15 years old.[1] During the incident Miller assaulted plaintiff backstage of the theater. At "first [plaintiff] became paralyzed but then [he] pushed Miller away." Miller continued to sexually assault plaintiff and plaintiff "was panicked and tried to avoid Miller." One evening "Miller confronted [p]laintiff, stating, 'I'm not gay!' Plaintiff responded and yelled, 'I know what you are – you're a pedophile!'" Soon after the abuse began and throughout high school, plaintiff told school employees about the abuse, including a teacher's assistant, his school counselor, an art teacher, and "other District staff members, but no one took action in response."

¶ 6    After the first incident of sexual abuse plaintiff suffered "intense emotional pain and shame," poor health, bad grades, suicidal ideation, and depression. Plaintiff began drinking alcohol. While attending college, plaintiff's substance abuse became worse because he was "able to sit and think about all of the abuse and trauma that had transpired the previous years." "In the following years," plaintiff sought substance abuse treatment and "intensive treatment to address the emotional trauma that Miller inflicted." For many years Miller received accolades from defendants; in 2002 defendants named its theater after Miller and in 2007 defendants inducted Miller into its alumni hall of fame. Miller retired in 2009.

---

[1] Plaintiff does not provide his date of birth.

¶ 7       In May 2020, plaintiff received email messages from defendants relating that a senior high school student had attempted to take his own life and had died the following day. Plaintiff "became triggered to investigate other acts of abuse by Miller." In June 2020 plaintiff read stories of other victims of Miller on Facebook and "realized that he was one of many abused by Miller over the course of decades." Plaintiff then realized that defendants "must have been aware of abuse allegations against Miller prior to 1987 and that they failed to properly report, investigate, respond to, and notify students and parents." Plaintiff filed his complaint against defendants in May 2021.

¶ 8       Defendants filed a motion to dismiss plaintiff's complaint pursuant to section 2-615 and 2-619(a)(9) of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2-615, 2-619(a)(9) (West 2020)), arguing, *inter alia*, that the claims were barred by the statute of limitations under section 13-202 of the Code (735 ILCS 3/13-202 (West 2020)).

¶ 9       In his response, plaintiff argued that his complaint was not time barred due to the discovery rule, fraudulent concealment, and equitable estoppel. Plaintiff contended that he did not discover his claims against defendants until 2020 when he found that Miller had abused many others and that defendants were aware of Miller's misconduct before plaintiff met him. Plaintiff further argued that defendants knew of Miller's chronic abuse before plaintiff became a student and concealed that knowledge from plaintiff.

¶ 10      On November 17, 2021, the trial court dismissed with prejudice plaintiff's complaint pursuant to section 2-619 of the Code because the "complaint is barred by the statute of limitations 735 ILCS 5/13-202, *et seq*." On December 14, 2021, plaintiff filed a timely notice of appeal.

¶ 11                                II. ANALYSIS

¶ 12                         A. Dismissal Based on Statute of Limitations

¶ 13    We note that defendants' motion under section 2-619(a)(9) of the Code should have been brought under section 2-619(a)(5). However, plaintiff was not prejudiced by the improper designation, and he responded appropriately to the motion. Accordingly, we will treat defendants' motion as if it had been filed under section 2-619(a)(5) of the Code. See *Wallace v. Smyth*, 203 Ill. 2d 441, 447 (2002) (although the defendants improperly designated their motion to dismiss under section 2-615 of the Code, the court treated the motion as if it had been brought under section 2-619(a)(9) because the plaintiff "suffered no prejudice from the improper designation.").

¶ 14    A statute of limitations defense is an affirmative defense properly pleaded in a motion to dismiss pursuant to section 2-619. *Cangemi v. Advocate South Suburban Hospital*, 364 Ill. App. 3d 446, 456 (2006). In reviewing a section 2-619 motion, we accept all properly pleaded facts as true and are concerned only with the question of law presented by the pleadings. *Cedeno v. Gumbiner*, 347 Ill. App. 3d 169, 174 (2004). Section 2-619(a)(5) of the Code allows for the involuntary dismissal of an action that "was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2020). We review *de novo* whether the trial court properly dismissed a cause of action under section 2-619(a)(5). *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 99 (2004).

¶ 15    Plaintiff alleges that he was sexually abused by defendants' employee, Miller, no later than 1990. Prior to January 1, 1991, claims of personal injury resulting from childhood sexual abuse were governed by the two-year limitations period for personal-injury claims. 735 ILCS 5/13-202 (West 2020); *Clay v. Kuhl*, 189 Ill. 2d 603, 608 (2000). Under section 13-202 of the Code, an action for personal injury must be filed "within 2 years next after the cause of action accrued." 735

ILCS 5/13-202 (West 2020). If the plaintiff is a minor, "he or she may bring the action within 2 years after the person attains the age of 18 years." *Id*. § 13-211.[2]

¶ 16 Here, plaintiff alleges that the abuse occurred in 1987 through 1990, when he was 15 through 18 years old. Therefore, plaintiff had until his twentieth birthday in 1992 to file a complaint. See 735 ILCS 5/13-211 (West 2020). However, he did not bring the present action until 2021, when he was approximately 49 years old. We determine that plaintiff's complaint is barred by the two-year statute of limitations contained in sections 13-202 and 13-211 of the Code.

¶ 17                                    1. The Common-Law Discovery Rule

¶ 18 Plaintiff argues that the trial court erred by dismissing his complaint because the discovery rule delayed the limitations period. Plaintiff contends that he did not know that defendants' wrongful conduct caused his injuries until 2020 when he first learned that defendants must have been aware of abuse allegations against Miller before he abused plaintiff.

¶ 19 Defendants argue that the discovery rule does not apply here because plaintiff was aware of his injury and knew it was wrongfully caused in 1987 when the abuse occurred. Therefore,

---

[2] On January 1, 1991, the legislature adopted section 13-202.2 of the Code (Pub. Act 86-1346 (eff. Jan. 1, 1991)), which codified a two-year statute of limitations for childhood sexual abuse cases and incorporated the common-law discovery rule. *Doe v. Hastert*, 2019 IL App (2d) 180250, ¶ 26 (section 13-202.2 codifies the common-law discovery rule). Under the express terms of section 13-202.2(b), the two-year limitations period does not begin to run until the victim "discovers or through the use of reasonable diligence should discover" that the abuse occurred and that the abuse caused the personal injury. Ill. Rev. Stat. 1991, ch. 110, ¶ 13-202.2(b) (now 735 ILCS 5/13-202.2(b) (West 2016) (20-year limitations period)).

according to defendants, plaintiff's 2021 filing was untimely because the limitations period expired in 1992 when plaintiff turned 20.

¶ 20    Under the discovery rule the limitations period begins to run when the plaintiff both (1) knows or reasonably should know of his injury and (2) knows or reasonably should know that it was wrongfully caused. *Parks v. Kownacki*, 193 Ill. 2d 164, 176 (2000). The limitations period begins running even if the plaintiff does not know that the misconduct was actionable. *Id.* Where a sudden traumatic event causes a plaintiff's injury, the cause of action accrues immediately and, thus, the statute of limitations begins to run. *Golla v. General Motors Corp.*, 167 Ill. 2d 353, 362 (1995). "An injury is traumatic if it is immediate and caused by an external force or violence." *M.E.H. v. L.H.*, 283 Ill. App. 3d 241, 251 (1996). Thus, the limitations period begins to run even if the plaintiff does not know that the misconduct was actionable. *Parks*, 198 Ill. 2d at 176. "The rationale supporting this rule is that the nature and circumstances surrounding the traumatic event are such that the injured party is thereby put on notice that actionable conduct might be involved." *Golla*, 167 Ill. 2d at 363.

¶ 21    Further, and most notably here, knowledge that an injury has been wrongfully caused "does not mean knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of action." (Emphasis and internal quotation marks omitted.) *Castello v. Kalis*, 352 Ill. App. 3d 736, 744 (2004). A person knows or reasonably should know an injury is "wrongfully caused" when he possesses sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct had occurred. *Hoffman v. Orthopedic Systems, Inc.*, 327 Ill. App. 3d 1004, 1011 (2002). Under well-settled law, once a party knows or reasonably should know both of the injury and that it was wrongfully caused, "the burden

is upon the injured person to inquire further as to the existence of a cause of action." (Internal quotation marks omitted.) *Castello*, 352 Ill. App. 3d at 745.

¶ 22    Here, plaintiff acknowledges that he knew "Miller's abuse caused him injury at the time it occurred" in 1987 through 1990. But he contends that he did not know until 2020 that *defendants* wrongfully caused his injuries due to their complicity in Miller's sexual abuse and their protection of Miller. Yet, plaintiff alleged that shortly after the first abusive incident in 1987, he told defendants' staff members of Miller's abuse "hoping that someone would take action to protect him," but they "ignored his pleas for help."

¶ 23    Examining plaintiff's complaint, we conclude that his action is untimely under the discovery rule. Based on the allegations in plaintiff's complaint, plaintiff had enough information in 1990, at the latest, to put him on notice that he was injured and that the injury may have been wrongfully caused not only by Miller, but by defendants. Plaintiff knew he was injured by defendants' employee and sought protection from defendants' staff members, but they ignored him. Armed with this knowledge, a reasonable person would have inquired further regarding the existence of a cause of action.

¶ 24    Plaintiff relies on *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161 (1981), a tort action arising from exposure to asbestos to support his argument. In *Nolan*, the plaintiff's decedent worked as an asbestos insulator from 1941 to 1973. *Id.* at 164. In 1957 the decedent first learned he had lung problems and in 1965 he learned he had pulmonary fibrosis. *Id.* at 171. In 1973, the decedent first discovered that he had asbestosis, caused by exposure to asbestos materials at his work. *Id.* at 169. The court held that "when a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused, the statute begins to run and the party is under an obligation to inquire further to determine whether an actionable wrong was committed."

*Id.* at 171. The court held that summary judgment was improper because there was a question of fact regarding whether the decedent could have reasonably known during the limitations period that his lung problems were caused by the asbestos materials at work. *Id.* at 171-72. Thus, as our Supreme Court explained in *Clay*, application of the discovery rules was necessary because the plaintiffs did not discover that they suffered *any* injury until long after the tortious conduct occurred. *Clay*, 189 Ill. 2d at 612 (citing *Golla*, 167 Ill. 2d at 367). In contrast, here, plaintiff knew he suffered an injury at the time the tortious conduct occurred. Therefore, this case is distinguishable from *Nolan*.

¶ 25    This case is more akin to *Castello*. There, the plaintiff's attempt, long after the expiration of the limitations period, to join a defendant who had misread the results of her earlier pap smears was deemed untimely because within the limitations period, the plaintiff knew that the diagnosis of her cervical cancer had been missed by other medical professionals who had misread more recent pap results. *Castello*, 352 Ill. App. 3d at 749. Like plaintiff here, the plaintiff in *Castello* argued that the timeliness of her complaint should have been measured from the date she learned the identity *of a particular defendant* who was potentially at fault. The appellate court rejected that argument, stating:

> "[T]he essence of plaintiff's position here is that [the plaintiff] should not have been charged with knowledge sufficient to trigger the running of the limitations period as to any particular defendant until she knew or reasonably should have known that her injury was caused by *that defendant*. As stated in *Wells [v. Travis*, 284 Ill. App. 3d 282 (1996)], our supreme court has expressly disavowed any such interpretation of the discovery rule." [citing *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 416 1981] (Emphasis in original.) *Castello*, 352 Ill. App. 3d at 287.

Like the plaintiff in *Castello*, plaintiff here attempts to assert the discovery rule where he alleges that he did not know that the particular named defendants caused his injury. However, plaintiff's allegations make clear that he had sufficient information about his injury and its causes to require him to bring suit within two years after he reached 18 years of age.

¶ 26    Plaintiff also argues that dismissal was improper because application of the discovery rule is a question of fact. In most instances, the time at which a plaintiff knows or reasonably should have known both of the injury and that it was wrongfully caused will be a disputed question of fact. *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981). However, the question may be determined as a matter of law when the answer is clear from the pleadings. *Clay*, 189 Ill. 2d at 609-10.

¶ 27    Plaintiff urges us to follow *Newell v. Newell*, 406 Ill. App. 1046 (2011). In *Newell*, the plaintiff sued his mother, alleging conversion and breach of contract involving the mother's unauthorized withdrawal of funds from a saving account in the plaintiff's name. *Id.* at 1047. Before the plaintiff's 18th birthday and in violation of a court order, the mother withdrew almost all the money from the plaintiff's account. *Id.* at 1049. When the plaintiff was 16 or 17 years old, his mother told him that she changed the age to obtain the funds from 18 to 21. *Id.* at 1048. When the plaintiff was almost 21, the mother told him that he had to wait until he was 23 years old to withdraw the money. *Id.* The plaintiff was curious and worried but he trusted his mother and so he decided to wait until he was 23 to withdraw the money. *Id.* When the plaintiff was 23 or 24 the plaintiff's mother told him there was no money left in the bank account. *Id.* When the plaintiff was 25, he filed a complaint against his mother. *Id.* at 1049. The trial court granted summary judgment in the mother's favor based on the three-year statute of limitations. *Id.* The appellate court reversed because the plaintiff alleged that his mother fraudulently concealed her wrongful conduct from him and, therefore, there was a question of fact regarding when the plaintiff discovered, or had

reason to know, that a cause of action might exist. *Id.* at 1053. However, *Newell* is distinguishable from this case because, as we explain below, fraudulent concealment does not apply here.

¶ 28                                      2. Fraudulent Concealment

¶ 29    Plaintiff argues that the trial court erred by dismissing his complaint because it was timely under the fraudulent concealment statute (735 ILCS 5/13-215 (West 2020)). Plaintiff contends that defendants lulled him into inaction by concealing his cause of action from him by their affirmative acts and silence. Plaintiff asserts that defendants misled him to believe that they had not detected Miller's abuse.

¶ 30    The fraudulent concealment statute provides:

> "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." *Id.*

Fraudulent concealment is not a cause of action in and of itself. *Doe v. Boy Scouts of America*, 2016 IL App (1st) 152406, ¶ 80. Rather, it is an exception to the limitations period imposed on an underlying cause of action. *Id.* Generally, fraudulent concealment consists of affirmative acts or representations intended to lull or induce the plaintiff to fail to discover his claim or to delay the filing of his claim. *Wisniewski v. Diocese of Belleville*, 406 Ill. App. 3d 1119, 1154 (2011). A plaintiff must plead and prove that the defendant knew the acts or representations were false, the defendant intended to deceive the plaintiff and actually deceived the plaintiff, and the plaintiff relied on the defendant's acts or representations to his detriment. *Id.* Thus, generally, mere silence on the part of the defendant and failure by the plaintiff to discover a cause of action is not enough to establish fraudulent concealment. *Doe v. Boy Scouts of America*, 2016 IL App (2d) 152406,

¶ 81. However, where, as here, plaintiff alleges a special or fiduciary relationship between the defendant and the plaintiff, silence by the defendant about the facts giving rise to a cause of action may be sufficient to establish fraudulent concealment. *Id.* ¶ 82.

¶ 31    Importantly for our purposes, we note that courts have declined to apply fraudulent concealment to toll the limitations period in cases where "the claimant discovers the fraudulent concealment, or should have discovered it through ordinary diligence, and a reasonable time remains within the remaining limitations period." *Smith v. Cook County Hospital*, 164 Ill. App. 3d 857, 862 (1987). See also *Mauer v. Rubin*, 401 Ill. App. 3d 630, 649 (2010).

¶ 32    Here, assuming that defendants were in a special relationship with plaintiff, he was put on inquiry regarding defendants' alleged acts, silence, and inaction. Plaintiff alleged that soon after Miller's abuse began, he told his school counselor and art teacher about the abuse but they took no action. Plaintiff also alleged that he "informed multiple other [of the defendants'] staff members and volunteers about Miller's abuse hoping that someone would take action to protect him." But they "took no action in response to his allegations." Rather, defendants' "teacher assistant, counselor, art teacher, and other staff members and volunteers with knowledge of [p]laintiff's abuse by Miller ignored [his] pleas for help." Thus, at that point, while plaintiff was still in high school, he knew or should have known that defendants were not protecting his interests in the way that he desired. In other words, plaintiff should have discovered the alleged fraudulent concealment through ordinary diligence.

¶ 33    Further, plaintiff failed to allege that defendants' silence, acts, or representations, lulled or induced him to fail to discover his claims. Rather, he alleged that he repeatedly reported the abuse to defendants' employees, repeatedly attempted to seek protection from them, and was repeatedly ignored. Thus, once plaintiff knew that defendants' employees ignored his pleas for protection

from Miller's sexual abuse, any alleged concealment could not have been maintained in the face of ordinary diligence. See *Dancor International, Ltd. v. Friedman, Golberg, Mintz*, 288 Ill. App. 3d 666, 676-77 (1997) (holding that the statute of limitations was not tolled under the fraudulent concealment statute where the plaintiff could have discovered the concealed information through ordinary diligence). Therefore, assuming that defendants were in a special relationship with plaintiff, defendants' alleged acts, silence, or inaction could not amount to fraudulent concealment.

¶ 34    Plaintiff cites *Doe v. Boy Scouts of America*, 2016 IL App (1st) 152402 and *Wisniewski v. Diocese of Belleville*, 406 Ill. App. 3d 1119 (2011), to support his fraudulent concealment argument. As we discuss, both cases are distinguishable from this case.

¶ 35    In *Boy Scouts of America*, the plaintiff, was sexually abused by a scoutmaster between 1983 and 1986 while plaintiff was a minor. *Boy Scouts of America*, 2016 IL App (1st) 152402, ¶ 2. In 2013 the plaintiff joined a lawsuit against the defendants, Boy Scouts of America, and the Chicago Area Council, alleging negligence, fraudulent concealment of claims, and equitable estoppel. *Id.* In 1970 the defendants created a file on the scoutmaster when he was first banned for sexually abusing scouts. *Id.* ¶ 102. The trial court denied the defendants' motion for summary judgment based on the statute of limitations. Upon the defendants' motion, the court certified the following question to the appellate court for interlocutory review under Illinois Supreme Court Rule 308 (eff. Jan. 1, 2015):

"Does the fraudulent-concealment statute of limitations permit a plaintiff to maintain an otherwise time-barred action for child sexual abuse when he testifies that he knew, before the action was time-barred, that he had sustained a physical injury from the abuser's conduct and that the abuser had been arrested and tried for similar crimes?" *Id.* at ¶ 4.

The appellate court answered the question in the affirmative (*id.* at ¶ 7) reasoning that if the plaintiff was in a special relationship with the defendants a reasonable jury could find that their silence amounted to fraudulent concealment. *Id.* at ¶ 96. The record showed that the defendants knew that the scoutmaster had a history of pedophilia, yet they represented that their adult leaders were safe and trustworthy. *Id.* ¶ 90. The defendant required intimate relationships between scouts and scoutmasters and taught the plaintiff to obey scout leaders which he did to the best of his ability because he took his oath seriously. *Id.* ¶¶ 90-91. The court held that there was a question of fact regarding whether or not the defendants fraudulently concealed the plaintiff's cause of action. *Id.* ¶ 97. The court reasoned that, given the defendant's representations and the relationship of trust that the defendants instilled in the plaintiff, a reasonable jury could find that the plaintiff had no duty to investigate the liability of the defendants for his abuse. *Id.* ¶ 103.

¶ 36    Here, unlike the plaintiff in *Boy Scouts of America*, plaintiff makes no allegation that he delayed bringing his cause of action because defendants promoted obedience to Miller or intimacy between plaintiff and Miller, or that plaintiff took an oath of loyalty to Miller or defendants that he took seriously. Rather, plaintiff alleges that after Miller first abused him, he pushed Miller away, became angry, and yelled at Miller, "you're a pedophile!" Thus, *Boy Scouts of America* is distinguishable from this case.

¶ 37    In *Wisniewski*, the plaintiff was sexually abused by a priest between 1973 and 1978 while plaintiff was a minor. *Wisniewski*, 406 Ill. App. 3d at 1122-23. In 2002 the plaintiff filed a complaint against the defendant, the Diocese of Belleville, alleging negligence, willful and wanton conduct, fraud and deceit, and civil conspiracy. *Id.* at 1122. The plaintiff alleged that the defendant knew the priest had molested other children at other parishes before transferring him to the plaintiff's parish. *Id.* To preclude the defendant from asserting that his complaint was time barred,

the plaintiff alleged that the defendant fraudulently concealed his cause of action. *Id.* at 1148. On summary judgment, the trial court declined to decide this issue because the plaintiff raised a question of fact regarding whether the defendant fraudulently concealed his cause of action. *Id.* at 1148-49. Therefore, the issue went to the jury and it found that the defendant fraudulently concealed the plaintiff's cause of action and awarded the plaintiff $5 million in damages. *Id.* at 1153.

¶ 38    The defendant appealed arguing, in part, that the plaintiff failed to establish fraudulent concealment as a matter of law. *Id.* The appellate court upheld the jury's finding of fraudulent concealment reasoning that the evidence showed the plaintiff's injury did not manifest until 2002 when his defense mechanism failed. *Id.* at 1162. Before then, his sense of reality had been manipulated and he had been programmed to believe that the abuse was a good thing and that it was helpful to the priest. *Id.* at 1163. The plaintiff had not experienced "any significant problems in functioning or coping in his life until the media coverage of the Boston priest scandal in early 2002." *Id.*

¶ 39    In contrast to *Wisniewski*, plaintiff here alleges that "[i]mmediately after Miller's first incident of sexual abuse [he] experienced intense emotional pain and shame." He also alleges that the abuse caused insomnia, lack of appetite, depression, declining grades, declining health, nightmares, suicidal ideation, and substance abuse. Plaintiff makes no allegation that he delayed filing his complaint because he was programmed to believe the abuse was helpful. For these reasons, this case is distinguishable from *Wisniewski*.

¶ 40                                3. Equitable Estoppel

¶ 41    Plaintiff also argues that defendants should be equitably estopped from relying on the statute of limitations because defendants concealed its knowledge of Miller's abuse of students

and held Miller out to be trustworthy, plaintiff participated in technical crew, which led to Miller's abuse of plaintiff.

¶ 42    The common-law doctrine of equitable estoppel, as applied in the statute of limitations context, parallels the fraudulent concealment statute. Under this doctrine, a party may estop another from raising the statute of limitations to bar a cause of action where:

> "(1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when that party decided to act, or not, upon the representations; (4) the other person intended or reasonably expected that the party claiming estoppel would determine whether to act, or not, based upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 82-83 (2006).

To claim the benefit of equitable estoppel, a plaintiff must have had no knowledge or means of knowing the true facts within the applicable limitations period. *Hastert*, 2019 IL App (2d) 180250, ¶ 40.

¶ 43    We reject plaintiff's equitable estoppel argument because any alleged reliance on defendants' misrepresentations and silence was not reasonable. Plaintiff relies on defendants' misrepresentations and silence as somehow misleading him into believing that its teachers were trustworthy and its school was safe. However, plaintiff knew in 1990, at the latest, that defendants' teacher, Miller, was not trustworthy, and that its school was not safe. Yet he did not file his complaint until 2021, more than 30 years after the two-year statute of limitation began to run.

Thus, plaintiff did not reasonably rely on defendants' alleged conduct and silence in delaying the filing of his complaint. Accordingly, equitable estoppel does not apply because plaintiff had ample time to file his action before the statutory deadline. *Hastert*, 2019 IL App (2d) 180250, ¶ 41. Accordingly, the trial court properly dismissed plaintiff's complaint as time-barred.

¶ 44                              B. Leave to File Amended Complaint

¶ 45     In the alternative, plaintiff argues the trial court erred by denying his motion for leave to file an amended complaint to add that defendants had actual knowledge that Miller had abused students before Miller abused plaintiff. However, plaintiff did not tender a proposed amendment to the trial court, and there is no proposed amendment in the record on appeal. A party's failure to tender a proposed amended complaint with supporting facts to the trial court significantly diminishes our ability to determine whether the proposed amendment would have stated a viable cause of action. See *Firebirds International, LLC v. Zurich American Insurance Co.*, 2022 IL App (1st) 210558, ¶ 43. As a result, failure to tender the proposed amendment forfeits the party's right to review of the trial court's denial of a request for leave to amend. *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 521 (1987). Absent forfeiture, even if plaintiff had amended his complaint, it is clear that no set of facts can be alleged that would entitle him to establish a legal excuse for failing to timely file the cause of action.

¶ 46     In summary, the trial court properly dismissed plaintiff's complaint because the allegations in plaintiff's complaint establish that the plaintiff's claims were barred by the applicable statute of limitations on plaintiff's twentieth birthday in 1992, and plaintiff fails to establish that the limitations period was delayed or tolled by the discovery rule, fraudulent concealment, or equitable estoppel.

¶ 47                              III. CONCLUSION

¶ 48    The judgment of the circuit court of Lake County is affirmed.

¶ 49    Affirmed.